Gary Wayne ETHERIDGE, Appellant,

v.

The STATE of Texas, Appellee.

No. 71189.

Court of Criminal Appeals of Texas.

June 22, 1994.

Rehearing Denied May 10, 1995.

**4**

Lloyd D. Stansberry, Alvin, Gregory L. Donnell, Angleton, for appellant.

Jim Mapel, Dist. Atty., and Mary Peter Cudd, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for State.

## OPINION

MALONEY, Judge.

A jury convicted appellant of capital murder for intentionally causing the death of an individual during the course of either robbery, aggravated sexual assault, or kidnapping. Tex.Penal Code Ann. § 19.03(a)(2) (Vernon 1990). The jury affirmatively answered the submitted issues prescribed by article 37.071(b) of the Texas Code of Criminal Procedure and the trial court assessed punishment at death. Tex.Code Crim.Proc. Ann. art. 37.071(e) (Vernon 1990). Appeal to this Court was automatic. *Id.* art. 37.071(h). Appellant raises twenty-six points of error.[1] We will affirm.

---

1. In each point of error, appellant generically alleges his error as a violation of both state and federal law. However, because appellant does not argue each authority separately, we will ad-

## I. PRE–TRIAL MOTIONS

In his first point of error, appellant contends the trial court abused its discretion when it denied his motion for change of venue which alleged he could not receive a fair trial in Brazoria County due to extensive pretrial publicity. Tex.Code Crim.Proc.Ann. art. 31.03(a)(1). At a pretrial hearing on the motion, appellant presented two Brazoria County residents who testified that appellant could not receive a fair trial in that county, including appellant's sister-in-law who further testified that she was fired from her job because of her relationship to appellant. The State presented three Brazoria County residents who testified that appellant could receive a fair trial in that county. Appellant did not produce any testimony from television, radio, or newspaper employees regarding media coverage on the instant offense, nor did he produce any transcripts of television or radio broadcasts or any newspaper clippings regarding media coverage on the instant offense.

Appellant points to twenty-three venirepersons who had heard about the crime prior to being called for jury service; seven of the twenty-three served on the jury. However, only one of those seven stated that she had initially formed an opinion as to appellant's guilt, and she further stated that she no longer maintained her original opinion as to appellant's guilt and could go forward with the presumption of innocence. The trial court ruled there did not exist so great a prejudice against appellant that he could not receive a fair and impartial trial.

In deciding whether the trial court abused its discretion in denying a motion to change venue, we determine whether there existed such a prejudice in the community that the likelihood that the defendant received a fair trial by an impartial jury is doubtful. *Beets v. State*, 767 S.W.2d 711, 742 (Tex.Crim.App.1987) (op. on reh'g), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989); *see also Phillips v. State*, 701 S.W.2d 875 (Tex.Crim.App.1985),

*cert. denied*, 477 U.S. 909, 106 S.Ct. 3285, 91 L.Ed.2d 574 (1986).

Extensive knowledge in the community of either the crime or the defendant, without more, is insufficient to render a trial unconstitutional. *Faulder v. State*, 745 S.W.2d 327, 339 (Tex.Crim.App.1987). Appellant "must ordinarily demonstrate an actual, identifiable prejudice attributable to that publicity on the part of members of his jury." *Beets*, 767 S.W.2d at 743; *see Faulder*. Publicity about the case must be pervasive, prejudicial and inflammatory. *Beets*, 767 S.W.2d at 743; *Phillips*, 701 S.W.2d at 879; *Demouchette v. State*, 591 S.W.2d 488, 490 (Tex.Crim.App.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). "The question to be asked is whether the publicity surrounding the case has permeated the community to such an extent that the prospective jurors' initial opinions cannot be set aside." *Beets*, 767 S.W.2d at 744.

While appellant has shown that several people had heard about the occurrence and existence of the crime, he has not sufficiently shown how this knowledge prejudiced his case. Appellant did not establish that whatever publicity existed permeated the community to such an extent that the venirepersons' initial opinions, if any, could not be set aside. *Beets*, 767 S.W.2d at 743. Thus, we cannot say the trial court abused its discretion in denying appellant's motion to change venue. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the trial court committed reversible error when it denied him access to prior jury service information maintained by the District Attorney. *See* Tex.Code Crim.Proc. Ann. art. 39.14. Appellant filed a pretrial motion requesting discovery of a "jury list" maintained by the District Attorney's office which contained:

> the name of every juror who has been selected to serve on a jury in Brazoria County, how they voted in their particular case, the result and outcome of the particular case in which they sat as jurors, and other significant and valuable information

dress the alleged error pursuant only to the law upon which appellant has based his argument and consider the rest as inadequately briefed and

therefore waived. Tex.R.App.P. 210(b) & 74(f); *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

concerning these Brazoria County residents. . . .

Appellant's motion further asserted that "[b]ecause of the long-term existence and nature of this Jury List, it has become and is now a public record. . . ."

At a hearing on the motion, the State claimed the requested records did not reveal how individual jurors voted in a particular case, but only the cause number, the charged offense, and the jury verdict. The State contended that such information was not discoverable because it constituted the State's work product. The trial court agreed, adding that the information was also not subject to discovery under the Open Records Act. Tex.Rev.Civ.Stat.Ann. art. 6252–17a, *repealed by* Act of May 22, 1993, 73rd Leg., ch. 268, § 46(1), 1993 Tex.Gen.Laws 998 (effective September 1, 1993).

■ We have previously held that "[t]he State has no obligation to furnish counsel for the accused with information he has in regard to prospective jurors." *Martin v. State*, 577 S.W.2d 490, 491 (Tex.Crim.App.1979). Further, if appellant believed that the information should be public, section eight of the Open Records Act provided a method to challenge the trial court's ruling.

At the time of trial, section seven provided, in part, that if a governmental body received a written request for information it considered exempt from the Open Records Act, but there has not been a determination to that effect, the governmental body must request an attorney general decision on the matter, otherwise the information is presumed to be public. Tex.Rev.Civ.Stat.Ann. art. 6252–17a § 7(a). A district attorney's office is a governmental body within the meaning of the Open Records Act. Op.Tex. Att'y Gen. No. JM–266 (1984). Section eight provided, in part, that if the governmental body refused to request an attorney general's decision on the matter, the person requesting the information could seek a writ of mandamus compelling the governmental body to make the information public. Tex.Rev.Civ.Stat.Ann. art. 6252–17a § 8(a).

In the instant case, the prosecution did not seek an attorney general's opinion under sec-

tion seven of the Act, and appellant did not seek mandamus under section eight. *See Espinoza v. State*, 669 S.W.2d 736, 737 (Tex. Crim.App.1984). Because appellant failed to follow the procedures set out in the Open Records Act, he can not now complain. Therefore, nothing is preserved for our review. *Redd v. State*, 578 S.W.2d 129, 131 (Tex.Crim.App.1979). Appellant's second point of error is overruled.

## II. VOIR DIRE

■ In his third point of error, appellant contends he was denied his right to compulsory process of service and effective assistance of counsel when the trial court sua sponte quashed seventy-eight subpoenas issued by appellant summoning the State's potential witnesses to appear at venire voir dire. U.S. Const. amends. VI & XIV; Tex. Const. art. I, § 10. Appellant claims the subpoenas were necessary in order to determine whether the venirepersons knew any of the State's potential witnesses.

An accused has a right to compulsory process for obtaining witnesses in his favor. Tex. Const. art. I, § 10; Tex.Code Crim. Proc.Ann. art. 1.05; *Willis v. State*, 626 S.W.2d 500, 504 (Tex.Crim.App.1979). Also the trial court has the right and the duty to impose reasonable restrictions on voir dire within the trial court's discretion. *Cantu v. State*, 842 S.W.2d 667, 687 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993); *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex.Crim.App. 1991), *cert. denied*, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992).

Appellant does not claim that he was denied the right to call witnesses on his behalf during guilt/innocence. Nor does he contend that he was denied the opportunity to ask the venirepersons if they knew any of the State's potential witnesses. Because he was not denied the right to call witnesses in his favor during the trial on the merits, we hold that appellant was not denied his right to compulsory process. Tex. Const. art. I, § 10; Tex. Code Crim.Proc.Ann. art. 1.05; *Willis*, 626 S.W.2d at 504. Appellant's third point of error is overruled.

In his fourth and fifth points of error, appellant contends the trial court abused its discretion when it sua sponte excused venirepersons Raymond and Peirsol, both of whom appellant claims were not disqualified. *See* Tex.Code Crim.Proc.Ann. arts. 35.19 & 35.16(a)(2)–(4).

Upon the trial court's preliminary questioning, Raymond unequivocally stated that due to her religious beliefs she would automatically vote against the imposition of the death penalty regardless of the facts. Before excusing Raymond, the trial court allowed the State and appellant to respond, but neither party objected to Raymond's excusal or sought to question her.

Upon the trial court's preliminary questioning, Peirsol stated that based upon what he had read in the newspaper he had reached a conclusion about appellant's guilt which would influence his verdict. As with Raymond, the trial court offered the State and appellant an opportunity to respond, but appellant did not object to Peirsol's sua sponte excusal.

■ We need not reach the merits of appellant's contentions. Even if the trial court erred in sua sponte excusing the venirepersons, because appellant did not object to their excusal, he did not preserve any error for our review. *Cooks v. State,* 844 S.W.2d 697, 718 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). Appellant's fourth and fifth points of error are overruled.

■ In his sixth point of error, appellant contends the trial court abused its discretion when it allowed the State to question venirepersons on facts particular to the instant case. *White v. State,* 629 S.W.2d 701, 706 (Tex.Crim.App.1982), *cert. denied,* 456 U.S. 938, 102 S.Ct. 1995, 72 L.Ed.2d 457 (1982); *see Maddux v. State,* 862 S.W.2d 590, 592 (Tex.Crim.App.1993). Specifically, appellant objected to a chart utilized by the State during voir dire which exhibited the special issues prescribed by article 37.071 of the Texas Code of Criminal Procedure, and inserted the names of appellant and the deceased where appropriate. Appellant did not object to the use of the chart until the ques-

tioning of the thirty-first venireperson. The trial court overruled his objection, but granted a running objection as to the remaining venirepersons. Appellant complains as to these remaining venirepersons.

■ The special issues provided under article 37.071 are a proper area of voir dire inquiry. Tex.Code Crim.Proc.Ann. art. 35.16(b)(3); *see Harris v. State,* 784 S.W.2d 5, 23 (Tex.Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). However, fact questions particular to the case on trial are improper. *Shipley v. State,* 790 S.W.2d 604, 608 (Tex.Crim.App. 1990).

Since the chart used by the State merely exhibited the special issues and utilized the names of appellant and the deceased, the trial court did not err in permitting the State to use it during voir dire. Appellant's sixth point of error is overruled.

■ In his seventh point of error, appellant contends the trial court prevented him from explaining to the venire the State's burden of proof on the second special issue. During general voir dire, appellant told the venire that the second special issue was impossible to answer because "nobody can prove whether there's a probability the defendant will in the future commit acts of violence." Appellant further stated: *"Now the State is going to have to bring you some witnesses that can predict the future in order for you to answer that question yes."* After the trial court sustained the State's objection that appellant's statement was a misstatement of the law, it instructed the venire to disregard the statement. The trial court stated that the jury would have to base its verdict on what it believed the evidence to be.

■ Although the trial court should afford defense counsel great latitude in questioning the venire, it can impose reasonable restrictions on voir dire examination. *Guerra v. State,* 771 S.W.2d 453, 467 (Tex.Crim. App.1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989). The trial court may restrict questions asked in an improper form. *Id.* at 468; *Adams v. State,* 577 S.W.2d 717, 724 (Tex.Crim.App.1979),

*rev'd on other grounds,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Here, the State's objection was that appellant misstated the law. In sustaining the State's objection, the trial court did not prevent appellant from discussing the State's burden of proof on the second special issue, and appellant did not attempt to ask a properly phrased question. The trial court did not abuse its discretion in sustaining the State's objection and instructing the venire to disregard appellant's statements. *See Trevino v. State,* 815 S.W.2d 592, 601 (Tex.Crim.App.1991) (trial court did not abuse discretion in restricting defendant from asking improperly phrased question during voir dire), *rev'd on other grounds,* 503 U.S. 562, 112 S.Ct. 1547, 118 L.Ed.2d 193 (1992). Appellant's seventh point of error is overruled.

■ In his eighth point of error, appellant contends the trial court abused its discretion when it prevented him from asking venireperson Martin a proper question during voir dire. *See Maddux; Nunfio v. State,* 808 S.W.2d 482 (Tex.Crim.App.1991). During his voir dire examination of Martin, appellant used hypothetical examples to explain circumstantial evidence and reasonable doubt to determine, in part, Martin's views regarding inculpatory statements.[2]

Appellant asked Martin whether she thought it reasonable that "the first thing someone is going to say to an officer that arrests him" is "I killed [a clerk] over there in that store." The trial court sustained the State's objection that the hypothetical asked the "witness to form an opinion or conclusion to a set of facts or circumstances." Appellant then asked, "Would you wonder about

that statement?" to which venireperson Martin responded affirmatively.[3]

■ The trial court abuses its discretion when it prevents defense counsel from asking a proper voir dire question. *See Maddux,* 862 S.W.2d at 592; *Nunfio,* 808 S.W.2d at 484–85. Unlike in *Maddux* or *Nunfio,* defense counsel in this case ultimately was permitted to ask the desired question. After the trial court sustained the State's objection, defense counsel asked the same question in a different manner without objection. Thus, the trial court did not prevent defense counsel from asking a proper voir dire question. Appellant's eighth point of error is overruled.

■ In his ninth point of error, appellant contends the trial court abused its discretion when it imposed an unreasonable time limit on the voir dire examination which unduly restricted his voir dire examination of venireperson Loose. *See McCarter v. State,* 837 S.W.2d 117 (Tex.Crim.App.1992).

The record reflects the trial court limited the examination of each venireperson to thirty minutes per side, but appellant used his allotted thirty minutes before he could finish questioning Loose. The trial court permitted appellant one minute "to wrap up," but appellant used two and one-half additional minutes before the trial court ordered him to stop questioning Loose. After the trial court denied his request for additional time, appellant dictated into the record the questions he would have asked Loose had the trial court given him more time.

Appellant sought to determine Loose's beliefs as to the credibility of police officers, theories of punishment, and whether Loose could follow the court's instructions if the other jurors disregarded them.[4] The trial

---

2. Appellant made several inculpatory statements after his arrest.

3. The following exchange occurred:
   Q. [Defense Counsel]: And then [the police officer who arrested robber no. 1] gives a statement. And lo and behold in his statement he says, "I saw this guy; I had his picture; I knew he was the robber; I arrested him; and the man said to me, 'I killed Clerk No. 2 over there in that store,' the first thing he said to me."
   Does that sound reasonable, the first thing someone is going to say to an officer who arrests him?

[Prosecutor]: I'll object to that, your Honor. Asking this witness to form an opinion or conclusion to a set of facts or circumstances.
   THE COURT: That's sustained.
   [Prosecutor]: Thank you, your Honor.
   Q. Would you wonder about that statement?
   A. [venireperson Martin]: Yes.

4. Defense Counsel dictated the following into the record:
   Your Honor, because of the time limitation imposed by the Court, I was not able to inquire about the potential juror's beliefs as to the credibility of a class of witnesses, specifically, a

court found that there had not been a problem reaching those issues with the preceding venirepersons, that there had been excessive "general visitation" by appellant with Loose, and that there had been excessive discussion of Loose's ability to consider voluntary intoxication as a mitigating factor. After the trial court denied appellant's challenge for cause to Loose because of his inability to consider mental age as mitigating evidence, appellant exercised a peremptory challenge upon Loose. Appellant had peremptory challenges remaining at the end of the voir dire.

In deciding whether the trial court has abused its discretion in refusing defense counsel's request for additional time to conduct voir dire examination in noncapital cases, we determine:

1. whether the party attempted to prolong the voir dire,

2. whether the questions that the party was not permitted to ask were proper voir dire questions, and,

3. whether the party was not permitted to examine [venirepersons] who actually served on the jury.

*McCarter*, 837 S.W.2d at 119 (citing *Ratliff v. State*, 690 S.W.2d 597, 600 (Tex.Crim.App. 1985)). We see no reason why this test would not be applicable, albeit slightly modified, in the capital context where veniremembers are questioned individually. *Cf. McCarter*, 837 S.W.2d at 120 (third prong of test added in *Ratliff* to address voir dire of individual veniremembers; only first two prongs need to be addressed where voir dire is conducted collectively). The test remains the same in the capital context, except that the third prong should read as follows:

3. whether the party was not permitted to ask proper questions of venirepersons who actually served on the jury.

Because Loose did not serve on the jury, the third prong of the test was not met. *See id.* The trial court did not abuse its discretion in refusing appellant's request for additional time. Appellant's ninth point of error is overruled.

## III. EXTRANEOUS OFFENSES AT GUILT/INNOCENCE

In his tenth point of error, appellant contends the trial court reversibly erred in allowing the State to prove he had fresh needle tracks on his arms at the time of his arrest. *See* Tex.R.Crim.Evid. 404(b). A criminal investigator with the Brazoria County Sheriff's Office testified that two photographs admitted during guilt/innocence depicted appellant's forearms with very small puncture wounds, "[n]ot unlike needle marks." The trial court overruled appellant's objection that the photographs were irrelevant.[5]

An accused may only be tried for the offense with which he is charged and not for being a criminal generally. *See Lockhart v. State*, 847 S.W.2d 568, 570 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); *see also* Tex. R.Crim.Evid. 404(b). However, evidence of "other crimes, wrongs, or acts" may be admissible to show the defendant's motive. Tex.R.Crim.Evid. 404(b); *Gosch v. State*, 829 S.W.2d 775, 783 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). In his written and oral recorded statements, appellant stated that he robbed the victims to get money to buy drugs. In his written statement, he further stated that he showed the victims the needle marks on his arms when he professed to them his need for money to buy drugs. The evidence of appellant's drug use was relevant

policeman, whether they had the ability to lie, whether they had any motivation to lie, whether him being commissioned puts him identifying with a class of court participants, namely, the police officers.

Whether he would give more credibility or credence to a policeman's testimony.

His theories, which theory of punishment he believes in and the reasons why;

And whether he would follow the Court's instructions, even if everyone else on the jury

disregards the Court's instructions during their deliberations.

5. Tex.R.Crim.Evid. 401. Appellant did not further object under rule 404(b). Although the better practice is to object under rule 404(b), an objection that evidence is irrelevant generally is sufficient to preserve error under rule 404(b). *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim.App.1991) (op. on reh'g).

to show appellant's motive in committing the instant offense. *Gosch,* 829 S.W.2d at 783 (evidence demonstrating accused's motive "is admissible if it is relevant as a circumstance tending to prove the commission of the offense). Appellant's tenth point of error is overruled.

▆ In his eleventh point of error, appellant contends the trial court erred in admitting evidence that he was on parole at the time of the offense. *See* Tex.R.Crim.Evid. 404(b). The prosecutor read appellant's written statement to the jury, including the following statement: "We then drove on to Houston and all this time Theresa [appellant's wife] was telling me to call my parole officer." Before the statement was read in its entirety, appellant objected that it included evidence of an extraneous offense, but the trial court overruled appellant's objection. No further mention was made during guilt/innocence of the fact that appellant was on parole at the time of the instant offense.

▆ Evidence of "other crimes, wrongs, or acts" is inadmissible to prove that an accused acted in conformity therewith. Tex. R.Crim.Evid. 404(b); *see Lockhart,* 847 S.W.2d at 570. And, evidence of an extraneous offense is not rendered admissible merely because it is part of the defendant's statement. *See Ramirez v. State,* 815 S.W.2d 636, 644–45 (Tex.Crim.App.1991). Following appellant's objection, the State did not show that the proffered evidence was relevant apart from its tendency to show that appellant was a criminal. *Lockhart,* 847 S.W.2d at 573 (citing *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (op. on reh'g)). Thus, the trial court erred in admitting that portion of appellant's statement referring to parole. *Id.* We now decide whether such error is harmless. Tex.R.App.P. 81(b)(2); *see Lockhart,* 847 S.W.2d at 573; *Harris v. State,* 790 S.W.2d 568, 584–89 (Tex.Crim.App. 1989).

▆ In deciding whether the error is harmless, we "focus upon the error and determine whether it contributed to the convic-

tion or the punishment." *Lockhart,* 847 S.W.2d at 573 (quoting *Harris,* 790 S.W.2d at 585). In making this determination, we consider

> the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, [we] should consider how much weight a juror would probably place upon the error. In addition, [we] must also determine whether declaring the error harmless would encourage the State to repeat it with impunity.

*Harris,* 790 S.W.2d at 587. We also "recognize that the presence of overwhelming evidence of appellant's guilt can be a factor in our evaluation of harmless error." *Moreno v. State,* 858 S.W.2d 453, 466 (Tex.Crim.App.) (citing *Harris,* 790 S.W.2d at 587, 588), *cert. denied,* —— U.S. ——, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993). The predominant question is "whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Lockhart,* 847 S.W.2d at 573 (quoting *Harris,* 790 S.W.2d at 588).

The jury had substantial evidence on which to base its verdict of guilty. Appellant made several incriminating statements, which were substantiated by the testimony of witnesses. The surviving victim identified appellant as her attacker. Forensic experts testified that physical evidence discovered at the scene matched samples taken from appellant. The State did not emphasize that appellant was on parole; the State did not repeat or allude to it again during guilt/innocence. The jury probably did not place much emphasis on the erroneously admitted statement. The reference to appellant's parole status was vague and consisted of only one sentence in appellant's three-page written statement. Further, we do not believe that holding this error harmless will encourage the State to repeat it with impunity. We conclude beyond a reasonable doubt that the erroneously admitted statement did not contribute to appellant's conviction.[6] Tex.R.App.P. 81(b)(2);

---

6. Such evidence would be admissible at punishment under article 37.071 of the Texas Code of

Criminal Procedure.

*see Moreno,* 858 S.W.2d at 466–67. Appellant's eleventh point of error is overruled.

## IV. RULE OF OPTIONAL COMPLETENESS

██ In his twelfth point of error, appellant contends the trial court reversibly erred when it excluded his tape recorded oral statement of April 2, 1990, because it was admissible under the rule of optional completeness. Tex.R.Crim.Evid. 107.[7]

On April 2, 1990, two months after the instant offense and the day before appellant was indicted for this offense, appellant gave a tape recorded oral statement to police. The tape was played outside the presence of the jury in a bill of exception proceeding. A transcript of the recording contained in the record reflects that appellant initiated a conversation in which he told police that he stabbed the surviving victim, but did not rape the deceased. He further stated that he hates blacks "real bad," that he was supposed to be on "psych medicine," that two weapons were used, that another person was involved (although appellant refused to name the other person), that "drugs had my [appellant's] brain screwed up," and that a person referred to as "Queer Eddie" was with appellant at some point. The State objected to the tape as "self-serving hearsay." Appellant claimed it was necessary to explain or contradict appellant's previous statements admitting the offense. The trial court sustained the State's objection.

Rule 107 provides:

When part of an act, declaration, conversation, writing or recorded statement is given by one party, the whole on the same subject may be inquired into by the other. . . . When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be

given in evidence. "Writing or recorded statement" includes depositions.

Tex.R.Crim.Evid. 107.

Appellant contends the tape was necessary to explain or contradict acts or declarations first offered by the State. The State had offered other statements by appellant in which he described the events surrounding the instant offense. However, the substance of appellant's previous statements was much the same as the statement he complains was erroneously excluded.[8] Further, appellant has not pointed to the specific acts or declarations previously offered by the State that the excluded tape would have explained or contradicted. He merely states that failing to admit the tape "prevented Appellant from presenting his full version of the instant offense to the fact finder." Appellant has not adequately briefed this point of error, and we decline to make his arguments for him. Tex. R.App.P. 210(b) & 74(f); *Robinson v. State,* 851 S.W.2d 216, 232 n. 1 (Tex.Crim.App.1993) (op. on reh'g) (*pet. for cert. filed* May 11, 1993); *Muniz v. State,* 851 S.W.2d 238, 251–52 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Johnson v. State,* 853 S.W.2d 527, 533 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993); *Narvaiz v. State,* 840 S.W.2d 415, 432 (Tex.Crim. App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Appellant's twelfth point of error is overruled.

## V. LAW OF PARTIES CHARGE

██ In his thirteenth point of error, appellant contends the trial court erred in overruling his request for a charge on the law of parties. Appellant argues that the evidence supported a conclusion that his wife was a party to the offense and therefore the requested charge should have been given. The State contends the evidence did not raise an issue that appellant's wife was a party.

---

**7.** All the cases cited in appellant's brief were decided under Tex.Code Crim.Proc.Ann. art. 38.24, the predecessor to rule 107. Article 38.24 was repealed September 1, 1986, the effective date of our rules of evidence.

**8.** In the other statements, appellant stated that shortly before the instant offense he was with a "queer named Ed," that he stabbed the deceased's mother, and that he did not rape the deceased.

The test for determining when an instruction should be submitted to the jury on the law of parties was set forth in *McCuin v. State*, 505 S.W.2d 827 (Tex.Crim.App. 1974):

> Where the evidence introduced upon the trial shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, *if the evidence of the conduct of the defendant then on trial would be sufficient in and of itself, to sustain the conviction, no submission of the law of [parties] is required* ...

> On the other hand, if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of [parties] and is dependent, at least in part, upon the conduct of another. In such a case, the law of parties must be submitted and made applicable to the facts of the case.

*Id.* at 830 (emphasis added); *see also Brown v. State*, 716 S.W.2d 939, 944 (Tex.Crim.App. 1986) (*McCuin* test still viable means for determining when cause should be submitted to jury on law of parties).

Even if it could be concluded that appellant's wife was an "active participant" in the offense, we hold the evidence of appellant's conduct is sufficient "in and of itself, to sustain [his] conviction." *McCuin.* The physical evidence found at the scene of the crime implicated appellant; the DNA derived from the blood found within the house where the instant offense took place, the DNA derived from blood found in the victim's stolen car, and the fingerprints lifted from the victim's car all matched appellant's. Appellant confessed to committing the offense and described its commission in detail.[9] Appellant's confessions are consistent with the physical evidence. Further, the surviving victim identified appellant as her attacker. Because the evidence of appellant's conduct in committing the instant offense is sufficient "in and of itself" to sustain his conviction, the trial court did not err in refusing his requested instruction on the law of parties. Appellant's thirteenth point of error is overruled.

## VI. IRRELEVANT EVIDENCE

In his fourteenth point of error, appellant contends the trial court reversibly erred when it admitted evidence concerning the surviving victim's "hardship and course of treatment" because such evidence was irrelevant. Tex.R.Crim.Evid. 401 & 402; *see Miller–El v. State*, 782 S.W.2d 892, 895 (Tex. Crim.App.1990).

Dr. James Duke, a surgeon at Hermann Hospital in Houston, testified at guilt/innocence that he treated the surviving victim for injuries she had sustained during the instant crime. He testified that "[s]he had sustained multiple [stab] wounds, penetrating wounds of her neck, face, chest, upper abdomen and upper extremities." After the State introduced photographs depicting these wounds, appellant objected to the photographs because details concerning treatment or further condition was irrelevant under *Miller–El.* The trial court overruled his objection. The State then showed Dr. Duke photographs of the deceased's stab wounds. Appellant again objected under *Miller–El* and the trial court again overruled his objection. Dr. Duke testified that the surviving victim's wounds were similar to the deceased's wounds. Dr. Duke

---

9. In appellant's written statement, he recounts how he went to the deceased's home, stole money from her mother, told the deceased and her mother that he needed the money for his drug habit, and showed them the needle marks on his arm. He attempted to put the surviving victim in a closet, but a struggle ensued in which he repeatedly stabbed her and her daughter, the deceased. Then he went outside and discovering that his car would not start, he stole the surviving victim's car. In his oral unrecorded statement, he also added that he went to their home to rob them of money to support his cocaine habit. In his oral recorded statement, he stated that his wife had nothing to do with the instant offense, that he went to the deceased's home by himself and left by himself. Because he was on cocaine at the time of the instant offense, he did not remember much of what happened in the deceased's house; however, he stated that at one point, he ordered the deceased to take off her pants. He unsuccessfully attempted to gag her and her mother with the pants, but when that did not work he tied them up with a robe or telephone cord.

further testified that "an ophthalmology consultant ... later performed" reconstructive surgery on the surviving victim's eye.

■ Evidence is relevant if it tends to make a fact of consequence more or less probable. Tex.R.Crim.Evid. 401; *Montgomery*, 810 S.W.2d at 386. Evidence of the extent of the victim's injuries is relevant if it is probative of an element which the State must prove in establishing the charged offense. *See Nobles v. State*, 843 S.W.2d 503, 512–13 (Tex.Crim.App.1992); *Miller–El*, 782 S.W.2d at 895. On the other hand, testimony regarding the victim's future hardship is generally irrelevant at guilt/innocence because it does not tend to make more or less probable the existence of any fact of consequence at guilt/innocence. *Miller–El*, 782 S.W.2d at 895.[10]

In proving the underlying felony of robbery alleged in the indictment, the State had to prove that appellant intentionally, knowingly, or recklessly caused bodily injury to the surviving victim or that appellant intentionally or knowingly threatened her or placed her in fear of imminent bodily injury or death. Tex.Penal Code Ann. § 29.02(a). The testimony in the instant case concerned the treatment rendered to the surviving victim, who was the alleged target of the robbery, while she was a patient at the hospital. Dr. Duke did not testify as to any future hardship or treatment that the surviving victim would incur; his statement that she required reconstructive surgery went to the nature and extent of her injuries. Dr. Duke's testimony concerning the nature and extent of the surviving victim's injuries was relevant to prove that appellant caused bodily injury to the surviving victim or placed her in fear of imminent bodily injury or death. *See Nobles*, 843 S.W.2d at 512–13; *Miller–El*,

782 S.W.2d at 895. Appellant's fourteenth point of error is overruled.

■ In his fifteenth point of error, appellant contends the trial court erred when it admitted irrelevant evidence that he attempted to conceal an extraneous murder. Tex.R.Crim.Evid. 401 & 402. A bartender of a club in Freeport who had known appellant for several years testified that on February 2, 1990, appellant came into the club and told her "Some dude pulled a knife on me. I took it away from him and killed the mother fucker." Appellant did not object. The witness then testified about the statement she gave to the police concerning this incident and certain State's exhibits not relevant here. She further testified that appellant called her "a couple of times" after he was arrested for the instant offense. When the State asked the witness what appellant had said to her in those phone calls, appellant objected outside the jury's presence that such testimony was irrelevant. The trial court overruled the objection. The witness then testified in the jury's presence that appellant called her and told her to "try to forget anything."

Appellant now complains about the testimony regarding this extraneous murder; however he failed to object when that testimony was presented. Appellant's later objection when the issue arose again in the context of the subsequent phone conversation was untimely and therefore did not preserve error. Tex.R.App.P. 52(a); *Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). The evidence was already before the jury. In the absence of an objection at the time the evidence was first admitted, nothing is preserved for our review. *Id.* Appellant's fifteenth point of error is overruled.

**10.** In *Miller–El*, a murder/attempted capital murder case, the defendant shot a victim severing his spine and rendering him a paraplegic. During guilt/innocence, without objection, the victim testified from his wheelchair that he was in the hospital for one week after the shooting, that doctors told him he would never walk again, and that at the time of trial (ten months after the offense) he was *still* undergoing treatment. *Miller–El*, 782 S.W.2d at 894. During punishment, the victim's doctor testified over objection that as a result of the victim's paralysis, the victim

would never regain bladder, bowel, or sexual functions, and that "[r]ecurring spasticity may ultimately deprive him of the use of a wheelchair." *Id.* We held that the victim's testimony during guilt was admissible because it was probative of the defendant's intent to kill, and that the doctor's testimony at punishment was admissible as a "circumstance of the offense." *Id.* at 895. However, this Court noted that the doctor's testimony, although admissible at punishment, was irrelevant to any issues at guilt. *Id.* (citing Tex.R.Crim.Evid. 401).

## VII.  CONFESSIONS

In his sixteenth through twenty-third points of error, appellant complains about the admission of three custodial statements: (1) an oral unrecorded statement to the arresting officer, (2) a written statement a few hours after the arrest, and (3) an oral recorded statement the day after the arrest.  Appellant filed a pretrial motion to suppress the statements, and after a pretrial hearing on the motion, the trial court ruled that the statements were admissible.

▉ In his eighteenth point of error, appellant contends the trial court reversibly erred when it admitted his oral unrecorded statement to the arresting officer because it was not "res gestae of the arrest."  *See* Tex.Code Crim.Proc.Ann. art. 38.22, § 5.  During the pre-trial suppression hearing, the arresting officer, a Houston police officer, testified that the Brazoria County Sheriff's Department contacted him about 4:30 a.m. on February 7, 1990 to help them locate a suspect they believed to be in Houston.  The arresting officer met with Brazoria County law enforcement at Ben Taub Hospital in Houston about 6:30 that morning, where they informed him that the suspect was wanted in connection with an assault of a woman and the sexual assault and death of her daughter in Brazoria County.  They gave the arresting officer a picture of appellant.

At approximately 7:45 that morning, the arresting officer, who was not in uniform, while driving his unmarked police car on a Houston freeway saw a man who he thought was the person in the photograph walking along the side of the freeway.  When the officer pulled off the freeway, the man, who apparently was hitchhiking, ran towards the car, opened the door, sat down, and thanked the officer for the ride.  The officer testified that he told the man to place his hands on the dashboard.  The man complied after the officer identified himself as a police officer, but the man had a "panicked look."  In response to the officer's request for identification, the man initially gave the officer a false name, but when the officer handed him the photograph, the man said, "Yeah, that's me."

The officer placed appellant under arrest and informed him of his *Miranda*[11] rights.

The arresting officer further testified that when he asked appellant if he knew why he was arrested, appellant told him "that he understood why he was under arrest, that he was under arrest for killing that 15-year-old girl and that he did kill her and that he was very sorry for what he had done and that he was on his way back to turn himself in to Brazoria County."  At trial, appellant denied admitting the offense to the officer.

▉ "At a suppression hearing, the trial judge is the sole judge of the credibility of witnesses and of the weight to be given to the testimony."  *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991) (citing *Meek v. State*, 790 S.W.2d 618, 620 (Tex.Crim.App. 1990)).  The judge may believe or disbelieve all or any part of a witness' testimony, and absent an abuse of discretion, we will not disturb his findings on appeal.  *Id.*  This Court has held that statements may be admissible as res gestae of the arrest even though they were the result of custodial interrogation.  *Harryman v. State*, 522 S.W.2d 512, 516 (Tex.Crim.App.1975) (citations omitted).  In *Miles v. State*, 488 S.W.2d 790 (Tex.Crim.App.1972), a police officer asked the defendant who was under arrest "what happened?" and the defendant responded "I cut the boys."  This Court held the statement was admissible as res gestae of the arrest because the officer's question was not leading or suggestive.  *Id.* at 792.  In the instant case, appellant's initial response that he knew he was under arrest for the murder of a young girl was the result of custodial interrogation; however, the rest of appellant's statement admitting the offense was not the result of custodial interrogation, rather it was an admission of guilt beyond the scope of the arresting officer's inquiry.  Although appellant's initial statement was in response to police questioning, the officer's question was not leading or suggestive.  The officer testified that appellant was "panicked," evidence of appellant's emotion.  *See Smith v. State*, 514 S.W.2d 749, 753 (Tex. Crim.App.1974) (statements were not admissible as res gestae of arrest because "there

11.  *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

was no evidence declarant was excited or emotionally stimulated"). Further, appellant was informed of his *Miranda* rights prior to his statement. *See Enriquez v. State*, 501 S.W.2d 117, 120 (Tex.Crim.App.1973). The record supports the trial court's finding that appellant's statement to the arresting officer admitting this offense was admissible as "res gestae of the arrest." *See* Tex.Code Crim. Proc.Ann. art. 38.22, § 5. Appellant's eighteenth point of error is overruled.

■ In his sixteenth and seventeenth points of error, appellant contends the trial court erred when it admitted his written and recorded statements because they were not taken in compliance with article 38.22 of the Texas Code of Criminal Procedure. Appellant contends his written statement was inadmissible because it does not reflect that he was informed of his rights prior to giving the statement. Tex.Code Crim.Proc.Ann. art. 38.22, § 2(a). Appellant's written statement indicates that he was informed of his rights at 9:34 *p.*m. on February 7, 1990, but appellant signed it at 1:34 p.m. on the same day. During the suppression hearing, an investigator with the Brazoria County Sheriff's Department testified that appellant was informed of his rights at 9:34 *a.*m. and that p.m. was a mistake. On cross-examination, the investigator again testified the correct time was 9:34 a.m. despite what the written statement says.[12] Further, the investigator who typed the written statement testified that the correct time was 9:34 a.m. and that p.m. was "just a typing error." He also

testified that he is "not a very fast typist" and that he only uses "two fingers."

Appellant did not argue the discrepancy in time either in his motion or at the hearing, nor did he object to the written statement on that basis.[13] Because this is the first time appellant has raised this argument, it is not preserved for our review. Tex.R.App.P. 52(a); *see Johnson,* 803 S.W.2d at 292.

■ Appellant contends his oral recorded statement was inadmissible because the tape recording does not reflect that he intelligently and knowingly waived his rights. Tex. Code Crim.Proc.Ann. art. 38.22, § 3(a)(2). It is undisputed that appellant was adequately advised of his rights as required by article 38.22, section 3(a)(2) and set forth in section 2(a). However, appellant argues that the recording must reflect that he knowingly and intelligently waived those rights.

In *Barefield v. State,* 784 S.W.2d 38 (Tex. Crim.App.1989), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3256, 111 L.Ed.2d 766 (1990), this Court held that the oral confession statute does not require that a recorded statement contain an express verbal statement from an accused that he waives his rights prior to giving a statement. *Id.* at 40–41. In so holding, this Court reasoned that written statements do not require an express waiver of rights. *Id.* at 41. Appellant argues that *Barefield* "was erroneously decided" because the concerns for oral statements are different from the concerns for written statements. Appellant argues, for example, that he was unaware that a recording was being made.[14]

---

12. The exchange was as follows:

> Q. [Defense Counsel]: In spite of what the document says, what time did you start this?
> A. [Witness]: 9:34 a.m.
> Q. Twenty-two minutes after he [appellant] was given his warnings by Judge Knopp?
> A. Very shortly after.

The magistrate, Brazoria County Justice of the Peace Knopp, testified that he informed appellant of his rights at 9:12 a.m., almost two hours after the arrest. Later during the same cross-examination, the following exchange occurred:

> Q. [Defense Counsel]: So the sequence would be you took custody down there, you brought him [appellant] upstairs, you got Judge Knopp up here, Judge Knopp gave him the warning and then you took him off to that middle room and started questioning him. Is that right?
> A. [Witness]: Yes, sir.

> Q. And that happened about 9:34 a.m., rather than p.m.
> A. Right.

13. In his motion, appellant stated that his *oral* statements, not his written statement, were obtained in violation of article 38.22. And, during the hearing on the motion, appellant objected to the admissibility of the written statement because it was taken after appellant invoked his right to counsel and because appellant did not initial the statement's paragraph which states that appellant waived his rights.

14. Prior to September 1, 1989, article 38.22, § 3(a)(3) required that an accused be informed that his oral statement is being recorded. Because this case occurred in 1990, this does not apply here.

The record reflects that midway through the interrogation, appellant became aware that his statement was being recorded and he had no objection.[15] Appellant was again informed of his rights and when asked if he wanted to continue the questioning, he responded affirmatively. We do not agree with appellant's contention that *Barefield* was wrongly decided. In the instant case, appellant was twice informed of his rights during the recording and he stated that he understood those rights. Appellant's sixteenth and seventeenth points of error are overruled.

In his nineteenth and twentieth points of error, appellant contends the trial court erred in admitting his written and oral recorded statements because the authorities continued to question him after he invoked his right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see Smith v. State*, 779 S.W.2d 417, 425 (Tex.Crim.App. 1989). Appellant asserts that he invoked his right to counsel while in the presence of the arresting police officer, while he was before the magistrate, and during questioning by Brazoria County investigators.

Several witnesses testified at the motion to suppress hearing. The arresting officer testified that after appellant admitted the offense, he explained what happened. He further testified that appellant did not request an attorney, but a few times appellant commented that he probably should not say anymore without an attorney. The officer told appellant this was a good idea, but appellant would inevitably resume talking on his own volition. The officer also testified that he did not initiate any further conversations with appellant. Appellant testified that he requested an attorney and that he did not initiate any conversations after his requests.

Justice Knopp, a Brazoria County justice of the peace, testified that appellant was brought before him at 9:12 a.m. on February 7, 1990, that he informed appellant of his rights, that appellant stated that he understood his rights and did not request an attorney. He further testified that he informed appellant that he would be afforded a reasonable opportunity to consult with an attorney, and that appellant declined his offer to make a phone call. Appellant, however, testified that he asked the magistrate when he would be able to speak with an attorney.

After he appeared before the magistrate, two Brazoria County investigators interrogated appellant. Appellant testified that after answering a few of their questions, he again requested to speak to an attorney, but they told him that he should continue answering their questions because he had already "waived [his] Fifth," and that he should "try to clear Theresa [who had been arrested in connection with this offense]." The interrogation culminated in a written statement which contained the statutory rights initialed by appellant. The investigators testified that appellant did not request to speak to an attorney during their questioning.

The next day, appellant gave a recorded statement to the investigators. As previously mentioned, appellant was informed of his rights twice during the recording of the oral statement, at the beginning of the tape and midway through after a break. Appellant stated that he understood his rights. The record also reveals that appellant did not request counsel during the recording of his statement.

The trial court found that the written statement was voluntary, that appellant did not request an attorney, but had adequate opportunity to do so, that appellant was aware of his rights, and that he fully understood and waived them. The trial judge listened to the audiotape outside the courtroom and found that it met the requirements of article 38.22. The tape was subsequently played for the jury.

██ "[A]n accused ... having expressed his desire to deal with the police only

---

15. The following exchange occurred:
[APPELLANT]: Do y'all have a tape recorder going?
[OFFICER] STROUD: You have—yes, there is. Does that make any difference to you?
[APPELLANT]: No, it don't make no difference.

through counsel is not subject to further interrogation by the authorities until counsel is made available to him, unless the accused himself initiates further communications, exchanges, or conversations with the police." *Smith*, 779 S.W.2d at 425 (quoting *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1885)). First, we examine the totality of the circumstances and determine whether appellant actually invoked his right to counsel. *Id.* (citing *Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984)). This Court has written:

> The mere mention of the word "attorney" or "lawyer," without more, ... does not automatically invoke the right to counsel. [citation omitted] Where, as in the instant case, "a person's invocation of his right to counsel is not clear and unambiguous, but is instead equivocal, the interrogating officers are not required to automatically cease the interview, but may continue questioning as long as the questions are specifically aimed at discovering whether the accused indeed wants to consult with counsel or wishes to proceed with the interview without benefit of counsel." [citations omitted]

*Robinson*, 851 S.W.2d at 223–24 (Tex.Crim. App.1991) (op. on original submission); *see also Hicks v. State*, 860 S.W.2d 419, 430 (Tex.Crim.App.1993). If we determine that appellant invoked his right to counsel, we next determine whether appellant initiated further discussion with the police and if so, whether he knowingly and intelligently waived his invoked right. *Smith*, 779 S.W.2d at 426 (citing *Smith v. Illinois*, 469 U.S. at 95, 105 S.Ct. at 492–93; *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983)). The statements are admissible if all of these steps are met.

■ We will assume for the sake of argument that appellant invoked his right to counsel while talking to the arresting officer. Appellant testified that he told the officer that he should not say any more until he spoke with an attorney, and the arresting officer testified that appellant made such statements. However, according to the arresting officer, appellant initiated further dialogue after each invocation. The officer in-

formed appellant of his right to counsel immediately upon arrest, and it does not appear that appellant did not understand those rights. Further, appellant was informed of his rights twice more before he signed the written statement and he understood and waived those rights. Finally, the record reflects that appellant was informed of his rights twice during his recorded statement.

Appellant testified to a different version of the facts; he denied initiating any conversation with the police. However, as previously mentioned, the trial court, as the judge of the credibility of witnesses at a suppression hearing, can believe or disbelieve all or any of the witnesses. *Cantu*, 817 S.W.2d at 77. The record reflects that appellant initiated further conversations with the police and that he intelligently and knowingly waived his right to counsel. The trial court did not abuse its discretion in finding the written and recorded statements admissible. Appellant's nineteenth and twentieth points of error are overruled.

■ In his twenty-first through twenty-third points of error, appellant contends the custodial statements were products of an unlawful arrest. The testimony at the suppression hearing revealed that on February 2, 1990, prior to appellant's arrest, a Brazoria County investigator filed a formal complaint in affidavit form with Justice Dubose, a Brazoria County justice of the peace. In the complaint, it was stated that the surviving victim named appellant, whom she knew, as the attacker of both her and the deceased, and identified appellant's photograph. After reviewing the complaint, the justice determined that probable cause existed for appellant's arrest; and he issued an arrest warrant for appellant. However, although the complaint is part of the record, the arrest warrant is not. Appellant argues that because the State failed to produce the arrest warrant at trial, it cannot rely on the warrant to establish the legality of the arrest. Although appellant concedes that probable cause existed, he argues that a warrantless arrest was not justified under chapter fourteen of the Texas Code of Criminal Procedure. He contends that his custodial state-

ments were therefore tainted by his unlawful arrest.[16]

▪ When the State seeks to justify an arrest on the basis of an arrest warrant, it must produce both the warrant and the supporting affidavit in the trial court at the time of the justification of the arrest. *Miller v. State,* 736 S.W.2d 643, 648 (Tex.Crim.App. 1987). "This requirement is imposed so that the trial court may inspect the documents and determine whether probable cause existed and ensure that the arrestee's rights have been fully protected." *Garrett v. State,* 791 S.W.2d 137, 140 (Tex.Crim.App.1990). In *Garrett,* the State failed to produce a supporting affidavit to support the defendant's arrest warrant for parole violation, but the parole case worker testified at the suppression hearing. This Court wrote:

> Since the parole case worker was called and was subject to cross examination, appellant was not deprived of the opportunity to inquire regarding the basis for the warrant. The trial court was given the opportunity to determine whether the warrant was supported by a reasonable belief, and appellant's rights were protected. Even though no affidavit or other documentation was introduced, the requirement underlying the *Miller* decision was fulfilled.

*Id.* at 141 (footnote omitted).

In the instant case, the magistrate testified, without objection, that he did in fact issue an arrest warrant based upon the affidavit which he concluded established probable cause for appellant's arrest. In the affidavit, the surviving victim specifically named appellant as her attacker, and she identified a photograph of appellant. Appellant had the opportunity to cross-examine the magis-·trate as to the validity of the arrest warrant; instead, he chose to inquire about the magistrate's opinion on what constituted a reasonable time and opportunity to consult with a

lawyer. Further, there was no testimony contradicting the existence of the arrest warrant. We hold that although the State did not produce the actual arrest warrant, the trial court had adequate opportunity to determine whether probable cause existed for appellant's arrest. *Cf. id.* The trial court therefore did not err in admitting the custodial statements. Appellant's twenty-first through twenty-third points of error are overruled.

## VIII. PRE–TRIAL DISCOVERY ORDER

In his twenty-fourth and twenty-fifth points of error, appellant contends the trial court erred when it refused to strike the testimony of two witnesses because of violation of a pretrial discovery order. The State agreed to provide the defense with information on the prior convictions of the State's witnesses, and all scientific test reports. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (prosecution must provide defense with exculpatory material); Tex.Code Crim.Proc.Ann. art. 39.14.

▪ In his twenty-fourth point of error, appellant complains of the testimony of Payton Taylor at punishment. Appellant questioned Taylor on voir dire and discovered that Taylor had successfully completed a seven year probation term for felony possession with intent to sell hashish. The State had not provided appellant with Taylor's criminal record. The State explained that they did not learn of Taylor's conviction until the morning of his testimony. Appellant moved for a mistrial, and alternatively, that the trial court strike Taylor's testimony and the previous testimony referring to Taylor, and instruct the jury to disregard such testimony.[17] The trial court stated that the purpose of the pretrial discovery order was to prevent surprises and to enable defense counsel to prepare for cross-examination. The trial court

---

16. Appellant's written pretrial motion to suppress the custodial statements alleged:
   The arrest was illegal, in that the officers had no lawful warrant for Defendant's arrest, nor had authority to arrest without warrant, when Defendant was taken into custody.
   Appellant did not argue during the suppression hearing or trial that the State failed to produce the arrest warrant, nor did he object thereto.

17. A Freeport Police Officer testified that after Taylor was arrested on a drug charge, he agreed to be an informant in a drug deal with appellant. Appellant was then arrested, but not convicted, for delivery of cocaine.

found that appellant was not surprised since the witness admitted to the prior convictions, and there was therefore no need for him to attempt to impeach Taylor by calling other witnesses. The trial court then denied appellant's motion for mistrial and request to strike. Taylor then testified before the jury that he served a seven year probation and that he had been convicted of misdemeanor theft. Appellant renewed his objection which the trial court again denied. Appellant then cross-examined the witness regarding those convictions.

■ Impeachment evidence is considered to be favorable to the accused and is therefore subject to the mandatory disclosure dictates of *Brady. United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). However, failure to disclose impeachment evidence will only result in a constitutional violation if there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 678–82, 105 S.Ct. at 3381–84.

Unlike the evidence withheld from the accused in *Brady* and *Bagley,* the information in the instant case was addressed at trial. Appellant became aware of this information when the witness was testifying out of the jury's presence. Further, defense counsel actually used his testimony to impeach the witness before the jury. Therefore, we can not conclude that there is a reasonable probability that the result of this proceeding would have been different. We hold that the trial court did not abuse its discretion in admitting this evidence. Appellant's twenty-fourth point of error is overruled.

■ In his twenty-fifth point of error, appellant complains of the testimony of Janet McDonald. McDonald testified during guilt/innocence that she worked in the Brazoria County Sheriff's Office laboratory examining evidence consisting of body fluid. She retrieved 178 samples of blood from the crime scene upon which she ran 1,269 tests. Appellant objected to any testimony concerning the test results because the State did not provide him with her report until shortly before she testified. The prosecutor stated that he "thought" he had given defense counsel a copy of the report, but defense counsel denied receiving it. While defense counsel remembered discussing the test results with the prosecutor and McDonald during a pretrial conference, he did not recall the report at the meeting. McDonald, however, stated that the report was present during the meeting. She also stated that the report at the meeting was the same as the report given to defense counsel shortly before she took the witness stand, and that she had not prepared other reports concerning this case since their meeting. Appellant moved for a mistrial because he was "caught by surprise" due to the State's failure to produce the report prior to trial. He moved for a continuance in the alternative and asked that the trial court strike McDonald's testimony, and instruct the jury to disregard it. The trial court found that given the prior meeting, appellant was not surprised by the report's contents. The trial court nevertheless granted appellant a one hour continuance to review the report.

While the evidence was conflicting as to whether appellant had actually received a copy of the report prior to trial, appellant was aware of the contents of the report by virtue of his meeting with McDonald and the prosecutor. Appellant does not claim that the contents of the report differed in substance from the results discussed at the earlier meeting with the prosecutors and McDonald. Indeed, the evidence was to the contrary. And, the trial court afforded appellant time to review the contents of the report before proceeding. We conclude that the trial court did not abuse its discretion in admitting this evidence. Appellant's twenty-fifth point of error is overruled.

## IX. PHOTOGRAPHS

■ In his twenty-sixth, and final, point of error, appellant contends the trial court erred in admitting "inflammatory and prejudicial" autopsy photographs. *See* Tex. R.Crim.Evid. 403. Specifically, appellant asserts that the autopsy photographs are "entirely cumulative" of the "less gruesome" photographs taken at the scene of the crime earlier admitted. The State counters that the autopsy photographs were highly proba-

tive of the fact and manner of the victim's death.

 The following factors are some of the relevant considerations in determining the admissibility of photographs under rule 403:

> ... number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed[, and] ... the availability of other means of proof and the circumstances unique to each individual case ...

*Hicks,* 860 S.W.2d at 426 (quoting *Long v. State,* 823 S.W.2d 259, 272 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992)). Rule 403 dictates that a photograph "must have *some* probative value [which is not] substantially outweighed by its inflammatory nature." *Id.* Moreover, Rule 403 favors the admission of relevant evidence and presumes that relevant evidence will be more probative than prejudicial. *Green v. State,* 840 S.W.2d 394, 410 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993).

All the autopsy photographs are in color. Nine are 8 × 10 and seventeen are 3½ × 5. Six of the nine 8 × 10 photographs are enlargements of 3½ × 5 photographs. The photographs were introduced on behalf of the State, as part of Dr. Aurellio Espinola's testimony as to the injuries sustained by the victim. Some of the autopsy photographs depict the victim's body prior to cleaning and others depict the body after it was cleaned of blood. The photographs taken before cleaning reflect the overall state of the body as it was found, documenting the blood on the body. The photographs taken after cleaning more clearly depict the different injuries. Some of the photographs in question were enlarged to show a magnification of the vaginal area, and offered for purposes of demonstrating the sexual assault that accompanied the murder. Espinola explained that the enlargements were necessary to accurately depict the extent of the injuries inside and outside the vagina. Although the photographs are gruesome and detailed, they are not enhanced in any way and portray no more than the injuries inflicted. *See Narvaiz,* 840 S.W.2d at 429.

Further, the autopsy photographs are not "cumulative" of those taken at the crime scene. The crime scene photographs did not reflect all of the multiple stab wounds which encompassed the victim's body; nor did they reflect the fatal wounds inflicted on the victim's chest, or clearly reflect the sexual assault. Three of the crime scene photographs show parts of the body in relationship to the room. The other four crime scene photographs show only superficial or defensive knife wounds over selected portions of the body. The autopsy photographs more clearly illustrate the full extent of the injuries and the general state of the body. The photographs are probative of the violent nature of the crime committed but are not so gruesome as to be unfairly prejudicial. *Id.* We hold the trial court did not abuse its discretion in admitting the autopsy photographs. Appellant's final point of error is overruled.

The judgment of the trial court is AFFIRMED.

CLINTON, J., concurs in the result.