# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00686-CR

**Donny Earl Jones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
### NO. 2c02-06842, HONORABLE JOHN BARINA, JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Donny Earl Jones appeals his conviction by a jury of the misdemeanor offense of assault with bodily injury on a family member. *See* Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003 & Supp. 2004-05). A jury assessed punishment at a $100 fine and 360 days in the Bell County jail. In a single issue on appeal, he contends the trial court abused its discretion in allowing evidence of "past abuse" by the appellant and in failing to grant his motion for mistrial. Because the court did not abuse its discretion in allowing the testimony, we affirm the judgment.

The testimony at trial showed that appellant and the complainant had lived together "off and on" with her three children in Rockdale and Temple during the year prior to July 2002. He would live with her for "intervals," and then leave and come back. On July 31, 2002, he called her several times during the day. Although she told appellant she was not interested in renewing their

relationship, he arrived at her residence at approximately 6:00 p.m. with a bag of clothes. After a discussion in which the complainant told appellant that she was not interested in getting back together, she walked to the bathroom. Appellant followed her, accusing her of cheating on him. As the complainant turned around to face him, he hit her on the side of her face and her head hit a nearby wall. He then attempted to choke her with his hands.

Before trial, appellant had filed a motion in limine asking for a hearing prior to the mention of any extraneous offenses. The State agreed to the motion. During the direct examination of the complainant by the State, the following dialogue occurred:

Q. And what did you tell him when you were on the phone?

A. No. I told him no.

Q. Why?

A. Because of the past abuse that he had took me through.

[Defense attorney]: Your Honor, I'm going to object as to any incidents other than this particular incident.

The court sustained the objection. Shortly thereafter, the State asked the complainant about her conversation with the appellant when he arrived at her residence on July 31:

Q. What did he ask you when you opened the door?

A. He asked me how was I and how have me and the kids been.

Q. And what did you respond?

2

A. I told him we had been doing fine, how about himself, has he changed, did he get some help because of the past.

As the State began to interrupt the witness, the court instructed her: "We're not going into anything prior to that date, ma'am."

On cross-examination, defense counsel questioned the witness about one of two statements she had given to the police. She had written: "Because it takes two people to have an altercation, and I wasn't innocent. It's just how we handle our anger. He didn't injure me, just held me down." After asking the witness twice whether she was "totally innocent in this situation," defense counsel again asked about the statement and the following testimony occurred:

Q. Are you telling the jury that on July 31st, 2002, that you were not totally innocent in what happened?

A. I was totally innocent.

Q. You were totally innocent?

A. Yes, I was totally innocent. I just didn't think I was then.

Q. Pardon me?

A. I just didn't think—I didn't think that I was innocent. I didn't think that I was innocent then.

Q. Okay. So the jury will understand, on July 31st of 2002, you were not totally innocent in what you say happened?

A. Yes, I am totally innocent.

Q. Okay. At some point did you come to believe and say that you were not totally innocent?

A. Uh-huh. I just believed that I shouldn't have blamed myself for the abuse.

Q. My question, though, is, at some point did you come to believe that you were not totally innocent?

A. Yeah, at some point I did believe that.

Q. But mainly in y'all's relationship that you described for the jury, would it be fair to say that it takes two people to have the kind of altercation that y'all had?

* * *

Q. As a matter of fact, this altercation that y'all had, that's just how you and Mr. Jones handled your anger; isn't that true?

A. I believed that at that time, yes.

Q. Pardon me?

A. I believed that that was okay at that time, yes.

* * *

Q. Well, I'm asking you about July 31st, 2002.

A. Okay.

Q. So you agree that that's how the two of y'all handled your anger, correct?

A. Correct.

Q. Neither one of you were totally innocent, correct?

A. That's not correct.

Q. And as a matter of fact—

A. Everything I wrote there is incorrect.

* * *

4

Q. So when you stated a second ago that everything that you wrote down is not true—

A. I believed that he was going to get better, and I didn't want him locked up.

On redirect examination, when defense counsel asked her why she made the written statement, she responded: "I had a phone conversation afterward with [appellant]. And how we had spoke, I was like—we had altercations before of abuse, and—." Defense counsel then asked for a mistrial. Overruling the objection, the trial judge stated: "You opened the door, Mr. [defense counsel], when you said, this is the way we handle our anger." The witness then responded: "I had a conversation with [appellant] afterwards on the phone. And from the conversations and we talking, I was believing he could change. I didn't want to see another—how we would say it—person behind bars."

The next witness, a police officer, gave the following testimony on direct examination concerning what the complainant told the police officer when he responded to the scene:

Q. And did you ask her any questions when you got into the house?

A. Yes, sir. I asked her what happened.

Q. What did she respond?

A. She told me that her boyfriend had called her earlier in the day, she didn't really want to talk to him because he'd been abusive to her in the past. She hung up on him. He then showed up later in the day, wanted to come in.

Defense counsel did not object to this testimony.

5

A trial court's determination on the admissibility of evidence is reviewed for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). As a general rule, preservation of error requires that the party object or otherwise request relief each time the error is made. *See*, *e.g.*, *Etheridge v. State*, 903 S.W.2d 1, 14 (Tex. Crim. App. 1994); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). Failure to object means that any error is not preserved. Because counsel failed to object when the same testimony was elicited, error is not preserved. An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Any error in the admission of the objected-to testimony was therefore cured when either the complainant testified to the "past abuse" or the police officer testified to the same fact without objection. *Valle v. State*, 109 S.W.3d 500, 509-10 (Tex. Crim. App. 2003). Moreover, this same testimony was also elicited by defense counsel. Thus, it was defense counsel's strategy to elicit facts about the ongoing relationship between the parties for the purpose of either blaming the complainant or challenging her credibility. Questions concerning whether either party was "totally innocent" or how the parties handled their anger, as the trial court correctly observed, elicited the same testimony as that to which counsel objected and cured any error.

In any event, assuming there was error, any error was plainly harmless. The entirety of the complained-of testimony is set forth here. The reference to past abuse was general, not deliberately elicited by the State, and was cured by an instruction from the trial court. We cannot say that the trial court abused its discretion in admitting the testimony.

We overrule appellant's issue on appeal and affirm the judgment of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 6, 2005

Do Not Publish