Carlos DE LA O, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–02–00495–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 12, 2003.

Edward Camara, San Antonio, for appellant.

Daniel Thornberry, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

A jury found defendant, Carlos De La O, guilty on four counts of aggravated sexual assault of a child, three counts of sexual assault of a child, and two counts of indecency with a child. The jury assessed punishment at ten, fifteen, twenty, and thirty years' confinement; ten years' confinement; and ten years' confinement, respectively on each count.

## BACKGROUND

In August 2000, a sexual assault examination was performed on the complainant, who was fourteen at the time. The examination revealed she was pregnant, and in September 2000, the complainant had an abortion. A sample of complainant's blood and the products of conception were turned over to the Bexar County Forensic Science Center for DNA analysis. After defendant was arrested and incarcerated, a sample of his blood was taken and provided to the Center. A DNA analysis of the two blood samples and the products of conception revealed a 99.9% probability that defendant was the father.

## MOTION TO SUPPRESS

■ In his first, second, and third issues on appeal, appellant asserts the trial court erred in denying his motion to suppress the results of the DNA analysis because his blood was seized without a valid search warrant.

■ If the State intends to justify a search or arrest on the basis of a warrant, it is incumbent on the State to produce the warrant and its supporting affidavit for inspection by the trial court. *Etheridge v. State*, 903 S.W.2d 1, 19 (Tex.Crim.App. 1994) (arrest); *Moreno v. State*, 858 S.W.2d 453, 461 (Tex.Crim.App.1993) (search). This procedure allows the trial court to review the documents and determine whether probable cause exists and whether the accused's rights have been protected. *Etheridge*, 903 S.W.2d at 19; *Garrett v. State*, 791 S.W.2d 137, 140 (Tex. Crim.App.1990). Courts have excused the State from compliance with this production requirement if the State introduces testimony from the magistrate who issued the warrant, the officer who presented the probable cause affidavit for the warrant, or another witness familiar with the factual basis for the warrant. *See, e.g., Etheridge*, 903 S.W.2d at 19 (magistrate); *Garrett*, 791 S.W.2d at 141 (parole case worker); *Dorsey v. State*, 964 S.W.2d 701, 704 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd) (officer who presented affidavit and complaint "containing a short narrative" of facts in affidavit). Presentation of such other evidence suffices if the accused has the opportunity to cross-examine the witness concerning the validity of the warrant and the "trial court ha[s] adequate opportunity to determine whether probable cause existed." *Etheridge*, 903 S.W.2d at 19.

Here, the arrest warrant affidavit, arrest warrant, and search warrant affidavit

were admitted into evidence at the suppression hearing. The affidavit for the search warrant identifies defendant as the suspect. Karl Lorenz, the officer who obtained and served the search warrant, testified that he was involved in the preliminary investigation into the allegations against defendant. He said he prepared a search warrant affidavit and a request for a search warrant to obtain a vial of defendant's blood for DNA analysis. He stated that after Judge Sharon MacRae issued the search warrant, he took the warrant to Dr. John Sparks, the medical director at the jail in which defendant was incarcerated. Lorenz said Sparks reviewed the warrant, initialed it, and ordered the sample to be taken. Lorenz said he also served a copy of the warrant on the defendant before defendant's blood was drawn.

Judge MacRae also testified at the suppression hearing. She did not remember signing the affidavit, but she verified her signature on the document. Judge MacRae stated she would have reviewed the affidavit for a search warrant and found probable cause before signing the search warrant. She said her signature on this affidavit indicated she reviewed the affidavit and found probable cause. Judge MacRae stated it was not her standard procedure to sign an affidavit if she was not also presented with a search warrant. She said her signature on the affidavit indicated to her that a search warrant was presented to her at the same time as the affidavit. The trial court ruled, based on Judge MacRae's testimony, that a search warrant did indeed exist.

Defense counsel cross-examined Judge MacRae about the affidavit containing two signature pages, one dated October 4, 2000 and signed by the judge and Lorenz, and another dated October 5, 2000 and signed by only the judge. The judge could offer no explanation for the two pages. Defendant relies on the fact that Sparks' initials are on the affidavit, and not the warrant, as proof that only the affidavit was presented to Sparks. Defendant reasons that if Sparks had been shown the warrant, his initials would have appeared on that document and not on the affidavit. Defendant also relies on the fact the district clerk's office does not have a copy of the warrant on file as proof the warrant never existed.

Defendant does not assert there was no probable cause for the search warrant. Defense counsel did not cross-examine either Lorenz or Judge MacRae on the existence of probable cause or the validity of the search warrant. The lack of evidence in the clerk's files does not negate the existence of the warrant or the testimony of Lorenz and Judge MacRae. Based on this record, we conclude the trial court did not abuse its discretion in denying defendant's motion to suppress.

### EXPERT TESTIMONY

■ In his fourth issue on appeal, defendant asserts the trial court erred in excluding the testimony of his DNA expert, Dr. Paul Goldstein. At trial, the State objected to Goldstein's testimony on several grounds, including that he was not qualified.

■ While the proponent of the testimony has the burden of establishing the expert's qualifications, the trial court has the responsibility to ensure that "those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). The inquiry must be into the actual qualifications. *Id.* at 153; *Roise v. State*, 7 S.W.3d 225, 234 (Tex.App.-Austin 1999, pet. ref'd). The proponent must establish that the expert has the knowledge, skill, experience, training, or education regarding the specific issue before the trial court

that would qualify the expert to give an opinion on that particular subject. *Broders,* 924 S.W.2d at 152.

Goldstein has been a genetics professor at the University of Texas at El Paso since 1989. His field includes the study of heredity and DNA, and he has taught and published on both subjects. Goldstein obtained his doctorate in 1977, and approximately fifty percent of his education encompassed DNA testing. In 1972, he developed a technique that indicates whether DNA is present in a sample and whether the sample is pure. He has no experience in forensic analysis; however, he teaches doctoral students forensic technology and forensic techniques. He explained that he teaches the theory behind the analysis and techniques, but does not perform the techniques in a laboratory for forensic purposes. He uses the techniques for research purposes only.

In a hearing outside the jury's presence to determine the admissibility of his testimony, Goldstein said he reviewed the information received from the Bexar County Forensic Science Center to · determine whether the Center followed protocols and procedures established by the National Research Council for DNA analysis. He admitted forensic laboratories use different regulations than the National Research Council, but he insisted "[i]t's all the same standard scientific protocols." He said the underlying scientific theory for DNA research is the same for both experimental DNA research or forensic DNA research. However, he admitted the application of the technique may be different. He explained that all the applications have the same basis: to identify an individual, to differentiate between individuals, or to identify who contributed to a DNA sample. In other words, the testing is the same, but the use of the results of the test may be different, *e.g.,* to establish that a suspect's blood was at a crime scene, or to establish paternity in an inheritance dispute.

■■■ No precise rule or rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Matson v. State,* 819 S.W.2d 839, 851 n. 10 (Tex.Crim.App.1991); *Roise,* 7 S.W.3d at 234. Nor are there definite guidelines for determining the knowledge, skill, or experience required in a particular case. *Harnett v. State,* 38 S.W.3d 650, 658 (Tex.App.-Austin 2000, pet. ref'd). The expertise must be measured against the particular opinion the expert is offering. *Roise,* 7 S.W.3d at 234. Consequently, the question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. *Wyatt v. State,* 23 S.W.3d 18, 27· (Tex. Crim.App.2000). Absent an abuse of discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *Id.* Here, Goldstein had expertise in the area in which his opinion was offered: the forensic techniques and methodologies employed by the Bexar County Forensics Science Center. Therefore, Goldstein was qualified for the purpose for which his testimony was offered.

■■■ The State also asserts the exclusion of Goldstein's testimony was proper under Texas Rule of Evidence 403 [1] because it would not have assisted the jury. The State contends Goldstein's testimony would only have duplicated that of the State's own witness who conceded some of

---

1. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex.R. Evid. 403.

the factual assertions made by the defense. We disagree. Although the State's expert testified about how the DNA analysis was conducted, he did not concede any error or discrepancies. On the other hand, Goldstein would have characterized the analysis as containing error and he would have explained the significance of the error or discrepancies. Therefore, excluding Goldstein's testimony under Rule 403 was not proper.

■ The trial court erred in excluding Goldstein's testimony. However, error may not be predicated upon a ruling admitting or excluding evidence unless a substantial right of the party is affected. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim.App.2002); *see also* TEX.R. EVID. 103(a); TEX.R.APP. P. 44.2(b). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim.App.2001); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Error does not affect a substantial right if it does not influence the jury or has only a slight effect. *Motilla*, 78 S.W.3d at 355. In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id.* The presence of overwhelming evidence supporting the conviction can be a factor in the evaluation of harmless error. *Id.* at 356–58 (assessing effect of erroneously admitted evidence); *see also Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App.2000) (assessing effect of erroneously excluded evidence).

Here, the complainant testified that her first sexual encounter with defendant occurred when she was twelve years old. The encounters began as touching and culminated in sexual intercourse. The complainant said she had not engaged in sexual intercourse with anyone other than defendant. The results of the DNA analysis showed a 99.9% probability of a match between defendant's DNA and the products of conception. The defense offered no evidence to controvert these results. Goldstein's testimony was proffered to challenge the validity of the methodology and protocols utilized by the State in analyzing the blood samples and products of conception. Goldstein's testimony was not proffered to establish whether defendant actually contributed his DNA to the products of conception, nor would he have testified to a result other than the 99.9% probability. Pictures of defendant, the complainant, and defendant's daughter were introduced into evidence. The pictures show defendant and the complainant kissing and hugging, and the complainant drinking beer.

Based on the record as a whole, we conclude that the trial court's error in excluding Goldstein's testimony did not have a substantial and injurious effect on the jury's verdict. *See King*, 953 S.W.2d at 271; *see* TEX.R.APP. P. 44.2(b).

## CONCLUSION

We affirm the trial court's judgment.