Carlos V. De La O
TDCJ. No. 1111343
Alfred d. Hughes Unit
Rt 2, Box 4400
Gatesville, Texas 76597


December 28, 2015


Clerk
Court of Criminal Appeals
P.O. Box 12308, Capitol Station
Austin, Texas 78711

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 30 2015

Abel Acosta, Clerk

Dear Clerk;

On November 31, 2015, the 187th District Court issued Findings of Fact

and Conclusions of Law in Cause No. 2001-CR-3651, Trial court Writ No.

2001-CR-3651-W4. Applicant did not receive the Order until December 22, 2015,

and according to Texas Rules of Appellate Procedure 73.4, Applicant has ten

days from the receipt of the Order to file Objections. I have filed with

the District Clerk of Bexar County and I am forwarding this "COURTESY" copy

to this Court in the event that the District Clerk has already forwarded

my writ application to the Court of Criminal Appeals as required by 11.07,

Sec 3(c)

Sincerely Submitted

Carlos V. De La O, Pro Se

05,720-05

IN THE 187th DISTRICT COURT
BEXAR COUNTY, TEXAS

AND

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

| | |
|---|---|
| EX PARTE | § TRIAL COURT WRIT NO. 2001-CR-3651-W4 |
| | § |
| CARLOS V. DE LA O | § TRIAL CAUSE NO. 2001-CR-3651 |

APPLICANT'S OBJECTIONS TO
THE TRIAL COURT'S FINDINGS OF FACT AND
CONCLUSIONS OF LAW

TO THE HONORABLE JUDGES OF THE TEXAS COURT OF CRIMINAL APPEALS:

NOW COMES APPLICANT, CARLOS V. DE LA O, Pro Se and presents these objections to the trial court's findings of fact and conclusions of law as authorized by Texas Rules of Appellate Procedure, TRAP 73.4(b)(2).

Applicant received his copy of the trial court's findings on December 22, 2015, twenty-two days after the ORDER was signed November 31, 2015. I would like to bring the date to the attention of the Court's, November does not have 31 days. These objections are filed within the 10 days limit.

Applicant presented two constitutional violations in this writ filing, first being; The State violated Applicant's Due Process Rights, when it suppressed the 2002 Paternity DNA test, a Brady Violation, and the second being; The State violated Applicant's Due Process Rights when it's forensic scientist failed to follow established scientific protocols.

SPECIFIC OBJECTION #1

The 187th District Court Judge did not address the Brady violation in his ORDER, furhtermore, the State denied the allegation altogether, as it did the forsneic scientist failure to follow established scientific protocols.

The Supreme Court in Brady v. Maryland, 373 U.S. 83, 87 (1963), held

1.

that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution. To establish establish a Brady violation, Applicant must prove that (1) the prosecutor suppressed or withheld evidence, (2) favorable to the defense, and (3) material material as to isssues of guilt or punishment. Evidence is material with in the meaning of Brady if there is a reasonable probability that the proceeding would have been different had the evidence been disclosed. (Kyles v Whitley, 514 U.S. 419, 435 (1995).

There are several evidentiary facts which can not be denied by the State; (1) On June 5, 2002, an investigator working with the Bexar County District Attorney's Office served a warrant on Applicant and took a buccal swab of the inside of his cheek. (Exhibit 9, this Writ), (2) the investigator submitted submitted the buccal swab for DNA testing against the previous evidence submitted under CIL #00-03074, A, (Exhibit 10, this Writ), which resulted in the testing of the evidentiary items and later the issuance of a Serology/DNA Report, (Exhibit 14, this Writ), (3) Applicant can prove that it took a court order in order for the State to deliver a copy of the 2002 Paternity DNA test to Applicant in 2006, four years after his trial. (Exhibit 11, this Writ).

These documents prove Applicant claim and are not just frivolous filings of document by Applicant. Because the 187th District court did not address Applicant's Brady claim indicates that the court did not see that this was not a controverted, previously unresolved fact material to the legality of applicant's confinement in this writ application, 11.07, Sec. 3(b). The 187th District Court did not hold hearings, nor did it request affidavit's from the District Attorney, Attorney, Ed Camara or Attorney Anne More Burnham to determine whether the claim of the Applicant are in fact true. Judge Hilbig could not have used his recollection as to whether or not the State did in fact provide a copy to Applicant, because Judge Hilbig was just

2.

appointed to the 187th on January of 2015, so he would not have had any recollection of the events that transpired in 2002.

Applicant has had the 2002 Paternity DNA test since 2006, but the current claims and issues have not been and could not have been presented previously in the original writ application or in a previously considered application filed under this article because the factual or legal basis for Applicant's claims were unavailable on the date the Applicant filed his original writ and subsequent writ application. (11.07, Sec 4(a)(1).

Applicant cited Ex Parte Coty, 418 S,W,3d, 579 Tex. Crim. App. 2014, in which the Texas Forensic Science Commission issued a report detailing Dry Labbing by a serologist from the DPS Crime Lab. As argued by Applicant, Dry Labbing, prior to 2014 did not exist in the lexicon of legal/scienticif terms in Texas hurisprudence. "Dry-Labbing," occurs when results of a test are actually arrived at by guesswork or using evidence or results from another analysis. The Texas Forensic Science Commission concluded in it's report that the substance Salvado was testing when he engaged in **one instance of professional misconduct** was in fact, what he stated it was; However he reached the results by using evidence from another case to support his falsi- fied, but accurate, results. This is exactly what Reat did in the 2002 Paternity DNA test. Reat went back to the 2000 Paternoty DNA test and transposed the DNA data for Spengler and the fetus, (Exhibit 5, this Writ, p. 45-46 of 53), onto the 2002 Paternity DNA test, (Exhibit 13, this Writ, p. 22-23 of 30, see upper right corner), which is what "Dry-Labbing" is according to the Texas Forensic Science Commission. But the one important difference between Salvado's testing and Reat's testing and results. Salvado falsofoed the report by using evidence and results from another case, but he properly identified the substance tested, cocain. Reat's Dry-Labbing is quite different, Reat's 2000 Paternity DNA test is based on junk science and Reat's 2002 Paternity DNA test are based on those results. Salvado falisified

3.

the new report by using another case results, Reat's results are therefore also falsified on the 2002 Paternity DNA test, because Reat engaged in the same conduct as Salvaso, using results from another analysis. Dry Labbing.

In Applicant's original federal writ application, De La O v. Quarterman, CIVIL No. SA-06-CA-1031-JWP, the State of Texas in it's brief denied the very existence of the 2002 Paternity DNA test, specifically the State argued;

"De La O contends that samples were taken from his midtrial; that 16C and 16D documents shows a test was done; and that there were difference when comparing those results with results obtained in the 2000 test. **De La O has not shown that there was in fact, another DNA test run midtrial.** He relies primarily on the 16C and 16D docuemnts. Those are dated June 7, 2002. They state "developed profiles following removal of material profile." In other words, consistent with Reat's testimony, they appear to be the interperted results after analysis of the data which involed removing J.S's profile from the raw data and graphs. It is not clear that they are results from any new testing, as opposed to notes that may have assisted Reat in testifying.

**Therefore, de La O has not shown that the State withheld any evidence of a new test.** (State of texas Brief, p. 36, CIVIL No. SA-06-CA-1031-JWP).

In 2009, in federal court the State deined the very existence of the 2002 Paternity DNA test and denied that it suppressed material evidence. The State mislead the federal court, because the State knows that unless Applicant can overcome 11.07, Sec 4(a)(1), it's Due Process violation will never see the light of day. 11.073 was enacted to allow Applicant's to overcome this procedrual hurdle when scientici evidence that (1) was not available to be offered by a convicted person at the convicted person's trial; or (2) contradicts scientific evidence relied on by the State. Furthermore, 11.073 does not require Applicant to prove he is actually innocent of the crime, he must only show that the scientist did not follow established scientific

4.

protocols during his testing.

The 202 Paternity DNA test was not available during Applicant's trial, the State had suppressed the DNA test, furthermore, the State denied 2002 Paternity DNA test very existence in federal habeas court. Applicant could not have brought his Brady violation prior to 2014 in State court, the factual and legal basis of his claim did not exist prior to 2014. If Applicant would have submitted the 2002 Paternity DNA test prior to 2014, it would not have had any material value, as argued by the State in federal court, just **useless reanalysis** of the data for use during trial by Reat and therefore not meeting the requirement of Brady. Today the 2002 Paternity DNA test has enormous evidentiary value, because it proves that Reat Dry Labbed the test or tests.

The one important different 11.073 makes is it moves the focus and inquiry away from the scientists skill, education, knowledge and places it directly on whether the scientist followed established scientific protocols. This requires an inquiry into the science,as opposed to the legal aspect of the error. The failure of Reat to follow the science invloved in DNA testing and falsifying a scientific document by Dry Labbing exposes the material value of the 2002 Paternity DNA test as junk science. Applicant has met the Brady requirement of suppressed evidence favorable to a convicted person, and the "not available or not ascertainable through the exercise or reasonable dologence requirement of 11.07, Sec,4(a)(1), and 11.073, requirement that the new evidence or test contradict evidence relied by the State at trial. and Applicant has met his burden and allows this Court to Grant Review and Relief to Applicant, and a new trial ordered.

## OBJECTION #2

In the District Court Judge findings of fact and conclusions of law. the Judge states. "Because the Court need not rely on the possibility of changed scientific evidence when "[t]he prosecution's case was very strong even in the absence of DNA evidence," Applicant is not entitled to relief.

5.

yet the State in it's closing argument state that the "most damaging piece of evidence in this case against Mr. De La O is the DNA evidence." **"Undeniable of his guilt."** (RR. Vol 8, p. 48, 49).

The 187th District Court Judge used the Opinion from the federal court in De La O v. Quarterman, No. 07-50711, 2009 WL 997044, (5th Cir Apr. 14, 2009). were the Court states, the prosecution's case was very strong even in the absence of DNA evidence...One photograph showed [applicant and victim] kissing ...[Applicant's] daughter conceded that the victim would pull up her shirt and pull down her pants around [applicant] and the victim drank alcohol provided by [applicant].

This is a clear mistatement of the trial record, Christina never did testified that the victim pulled up her shirt and pulled down her pants around applicant, Christina itestified that the victim did that around her and her brother and sister. Also Christina never testified that applicant ever gave alcohol to the victim, Christina testified that no one ever gave her alcohol to the victim, that she just went and got it for herself and never testified that applicant was around when she did this. (RR. Vol. 7, p. 180-202).

The federal court's Opinion in De La O v. Quarterman, No. 07-50711, 2009, WL 997044, (5th Cir. Apr. 14, 2009), was written well before Applicant's second writ application, filed January 23, 2013, (Exhibit 16, this Writ), attacking the perjured testimony of both the victim, Spengler and Erin Reat, the State's serologist. Judge Raumond Angelini presided over Applicant's jury trial and ruled in his findings that the victim did not in fact commit perjury on inculpatory evidence that was presented at trial. Therefore her testimony is considered in the balance to be perjured, that is her entire trial testimony. Furthermore, Judge Angelini also ruled that Applicant had the factual basis to prove his argument of false and misleading testimony by Erin Reat, therefore Reat entire trial testimony is also considered perjured, accorfing to Cunningham v. State, 815 S.W.2d 313, 319 (Tex. App.

6.

--Dallas 1991). The trial court cannot use their testimony or evidence in making a determination to denie relief to applicant.

Also in the 187th District Court's findings of fact, it states that the court is not required to rely on the possibility of changed scientific evidence when, [t]he prosecution's case was very strong in the absence of DNA evidence."

The facts and scientific evidence of Applicant's error have not changed, what has changed is the enviorment surrounding the use of junk science in criminal prosecution and convictions. Prior to the release of the LANSMARK report from the National Academy of Science, "Strenthening Forensic Science In The United States," (2009), little was being said or done about junk science convictions in Texas. The creation of the Texas Forensic Science Commission met strong headwinds when ti attempted to investiagte Junk Science claoms and became a polotical arm of the justice system. Today the Texas Forensic Science Commission heads the Nation in scientific investigations of the use of junk science. A prime example is Ex Parte Coty, dealing with Dry Labbing. The Texas Forensic Science Commission's Chair, Dr. Di Miao, former Cheif Medical Examiner of Bexar County in 2006, filed an affidavit, as order by Judge Angelini in Applicant's original writ application. Dr. Di Miao affidavit states; "This Office did not receive from the Bexar County Sheriff's Department, any tissue as a result of an abortion that has any connection to Carlos De La O/or Jessica Spengler. Thus, the rest of the questions in the writ are not applicable." (Exhibit 1, Objections).

This has been Applicant's very argument since his arrest, conviction and in his appeals, that the State never had the remains of the fetus. Reat through his failure to follow established scientific protocols, intentionaly made Applicant the father at 99.9%, when his DNA was never in the sample.

It is because of this that the State's 2000 Paternity DNA test is based on junk science and dry labbing. Dr. Paul Goldstein testified that the

7.

State had thrown-away the fetus and the Applicant was exculded. LabCorp. testified that all they found was the DNA of Spengler. Dr. Di Miao's affidavit states the forensic lab never received the fetus from the Sheriff's Depatrment, yet the Court's still recognize the 99.9% findings by Reat.

The 187th District court's findings are based on the finality of the conviction and not the accuracy of Applicant's scientific arguments and documents. Finality of the conviction and accuracy of the science are opposed to each other. Science demands the most unwavering adherence to established scientific protocols, while justice allows for the smallest thread of circumstantial evidence to convict a person. The State's closing argument stated that the most damaging piece of evidence against Applicant was the DNA evidence, "Undeniable evidence of his guilt," yet today the DNA evidence is unimportant, that other evidence convicted Applicant.

During trial Judge Angelini ruled on scientific evidence and scientific testimony, when Judge Angelini admitted himself that he had no idea what a valid standard was, specifically Judge Angelini stated; "But see, the Kelly standard are so subjective. I mean you know, I don't know what a valid standard is, so, the fact that you asked him the question and he said yes, doesn't make it so." (RR. Vol 6, p. 30). Judge Angelini ruled that Dr. Goldstein, with 27 years of experience in DNA research could not testify in the presence of the jury, yet allowed Erin Reat, with on the job-training, testify as an expert. Goldstein was to be later found to be an expert by the 4th Court of Appeals, San Antonio. (De La O v. State, 127 S.W.3d 799 (Tex. App. 2003).

The landmark report by the National Academy of Science addressed this very issue, it stated; "Unfortunately, the adversairal approach to the submission of evidence is not well suited to the task of finding "scientific truth." The judicial System is encumbered by, amoung other things, Judges and lawyers who generally lack the scientific expertice neccessary to comprehend and evaluate forneisc evidence in a informed manner, defense

8.

attoreny's who often do not have the resources to challenge prosecutor's forensic expert's, trial judges (sitting alone) who must decide evidentiary issues without the benefit of judicial collegues and othen little time for extensive research and reflection, and very limited appellate review of trial court rulings admitting disputed forneisc evidence.

In the Texas Court of Criminal Appelas, Opinion by Judges Jjohnson, and Cochram, in <u>Ex Parte Robbins</u>, No. WR-73,484-02; 2014 Tex. Crim. App. LEXIS 1900, mirrors the report by the National Academy of Science, except the Judges focus the inquiry on the forensic experts science or testimony and the use of Non-Probative evidence presented as probative, Exculpatory evidence discounted, Inaccurate frequency or Statistic presented, Statistict provided without empirical support, non-numerical statements provided without empirical support, and Conclusions that the evidence originated from defendant.

The 187th District Court was not concerned whether Applicant's scientific evidence proves his allegation under 11.073, as shown by the court's use of the 99.9% conclusion by Reat, and Applicant's failure to meet the requirement of 11.07, Sec 4(a)(1), instead of 11.073 requirements.

There are several evidentiary facts which connot be denied by the State; (1) Reat testified that the Bexar County Lab did not have a protocol for the collection and identification of fetal tissue from masserated tissue, (2) Reat testified that the Bexar County Forensic Lab did not have a protocol for the extraction of fetal DNA from masserated tissue, (3) Reat testified he tested the DNA evidence at one time and in one place, a violation of his own labs protocols, (4) Reat testified that he did not identify stutters during his analisys, Reat also idenitifed contamination, but never resloved where the contamination came from, (5) Reat testified that there were no notes or formulas which explained his misture interpretation. These are facts that come from the trial record of Reat's expert testimony and are undeniable.

Applicant presented his scientific evidence by and through Dr. Goldstein,

9.

(RR. V.5, p. 25-105), LabCorp, (RR. V.5, p. 4-24, RR. Vol 7, p. 152-168), but the trial court and appellate court's have rejected it. The Appellate Court's use Judge Angelini's ruling on the scientific evidence and testimony when Judge Angelini did not know what a valid standard was. (RR. 6, p. 30).

Dr. Vincent Di Miao, formerly with the Bexar County Forensic Lab, now Chair of the Texas Forensic Science Commission, filed an affidavit in 2006 during Applicant's original writ application, Stated; that the Bexar county Forensic Lab did not receive the fetus from the Bexar County Sheriff's Office, (Exhibit 1, Objection), but the trial court and appellate court's never addressed these important documents. Applicant provided the trial court and Appellate Court a copy of the actual tissue collection form from the abortion clinic, (Exhibit 2, Objections), showing that the fetus was sent to Bio Medical Disposal, yet the State still holds on to the 99.9% findings by Reat when Reat's DNA testing of the 2000 Paternity DNA test and 2002 Paternity DNA test are based on junk science and dry labbing. Either Applicant's arguments and scientific documents proves his allegations ar they are frivolous.

11.073, the new junk science amendment, Ex Parte Coty and Ex Parte Robbins, The National Academy of Science Report and the Texas Forensic Science Commission, are the new factual and legal basis not available to Applicant in 2002, during his trial, 2006 during his original and subsequent writ submiss- ions, and allows for review of his merits and relief of his concivtion or in the alternative, a new trial ordered, based on good science and good scientific testimony.

CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Applicant would ask the trial court to recommend that relief be granted and a new trial ordered.

Respectfully submitted,

Carlos v. De La O, Pro Se
Rt 2, Box 4400
Gatesville, Texas 76597

10.

EXHIBIT 1



**BEXAR COUNTY MEDICAL EXAMINER'S OFFICE**
7337 LOUIS PASTEUR
SAN ANTONIO, TEXAS 78229-4565
(210) 335-4053
FAX (210) 335-4052

June 30, 2006

Judge Raymond Angelini
Bexar County Courthouse
187th District Court
Bexar County, Texas

RE:  Order On Application For Post Conviction Writ on Carlos De La O
No. 2001-CR-3651-W1

Dear Judge Angelini:

I am in receipt of your Order On Application For Post Conviction Writ on Carlos De La O dated June 23, 2006.

This Office did not receive, from the Bexar County Sheriff's Department, any tissue as a result of an abortion that had any connection to Carlos De La O and/or Jessica Spengler. Thus, the rest of the questions in the writ are not applicable.

Sincerely,

Vincent J.M. Di Maio, M.D.
Chief Medical Examiner

VJMD:gd

cc:  Carlos De La O
TJCJ #1111343
P.O. Box 128
Tennessee Colony, Texas 75880

Anne More Burnham
1202 South Alamo Street
San Antonio, Texas 78210

175

EXHIBIT 2

SPENGLER, JESSICA
03 001154
AGE: 14
DATE: 09/05/2000     SEQ# 7

REPRODUCTIVE SERVICES

GROSS EXAMINATION OF TISSUE

DATE _____ 9/05/00

| | IDENTIFIED | NOTES |
|---|---|---|
| 1. UTERINE PREGNANCY | | |
| 2. DECIDUA | ✓ | |
| 3. AMNIOTIC MEMBRANE | ✓ | |
| 4. CHORIONIC TISSUE | ✓ | |
| 5. UMBILICAL CORD | ✓ | |
| 6. FETAL PARTS | | |

POC COMPATIBLE WITH PHYSICIAN'S EXAM       YES_____ NO_____

→       TO BIOMEDICAL DISPOSAL       YES _X_ NO_____

TO HISTOPATHOLOGY LABORATORY       YES_____ NO _X_

ESTIMATED

BY FF SCALE

EXAMINED BY MEDICAL ASSISTANT

_____

(SIGNATURE)

CONFIRMED BY DOCTOR

_____

(SIGNATURE)

136A/006/1296