# NO. 12-23-00198-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *RAINER BERNARD WISEMAN, APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rainer Bernard Wiseman appeals his conviction for continuous sexual abuse of a child under the age of fourteen. He raises three issues on appeal. We affirm.

## BACKGROUND

Appellant was indicted with the felony offense of continuous sexual abuse of a child under the age of fourteen.[1] Appellant pleaded "not guilty" to the offense and the matter proceeded to a jury trial. The relevant evidence at trial showed that after the victim's mother and father divorced. The father obtained primary custody of the victim and her brother, with mother having visitation on alterning weekends.

Appellant and the victim's mother were coworkers. The victim's mother became ill, she was later evicted from her residence, and subsequently moved into Appellant's home. Their relationship progressed from a platonic relationship to romantic.

---

[1] *See* TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2023).

The victim, who was thirteen years old at the time of the abuse, testified about several occasions when Appellant sexually assaulted her. The alleged underlying acts of sexual abuse occurred from December 1, 2021, through May 20, 2022. She testified that Appellant touched her private parts under her clothes when she was at her mother's residence for visitation, made her touch his penis, and kissed her private parts around Mother's Day. She also testified that she caught Appellant watching her while she was in the bathroom.

In May, while at her mother's house for visitation, she made an outcry. She contacted her father by telephone and stated that Appellant gave her a sex toy. On the phone with the kids' father, Appellant admitted kissing the victim on the lips. The victim and her brother departed the residence on foot, and their father located them and contacted the police.

Pursuant to a search warrant, police searched Appellant's home and found two cell phones and two sex toys, one of which matched the description of the toy that Appellant gave the victim. On Appellant's phone, police found four recently deleted photos of the victim sleeping and dressed only in a bra and panties. They also found searches for pornography that bore similarities to his relationship dynamic with the victim as her stepfather.

The jury found Appellant "guilty" of the offense. After a sentencing hearing, the jury sentenced him to life imprisonment without parole.

## CELLULAR PHONE SEARCH

In his first issue, Appellant contends that the trial court reversibly erred in denying his motion to suppress the evidence found in the data search of his cellular phone and the results of the search should have been excluded.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *State v. Arellano*, 600 S.W.3d 53, 57 (Tex. Crim. App. 2020); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State*, 73 S.W.3d 278,

281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We will uphold the trial court's ruling on a motion to suppress if it is (1) supported by the record and (2) correct under any theory of law applicable to the case. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Ross*, 32 S.W.3d at 855-56.

## Applicable Law

It is well settled that when a defendant objects to the court admitting evidence on the ground that it was unlawfully seized and the State relies on a search warrant, in the absence of a waiver, reversible error will result unless the record reflects that the warrant and supporting affidavit were exhibited to the trial judge. *Handy v. State*, 189 S.W.3d 296, 298 (Tex. Crim. App. 2006). The State properly discharges this burden when it *produces* the warrant and its supporting affidavit for inspection by the trial court. *Etheridge v. State*, 903 S.W.2d 1, 19 (Tex. Crim. App. 1994) (arrest); *Moreno v. State*, 858 S.W.2d 453, 461 (Tex. Crim. App. 1993) (search); *De La O v. State*, 127 S.W.3d 799, 801 (Tex. App.—San Antonio 2003, pet. ref'd) (search). This procedure allows the trial court to review the documents and determine whether probable cause exists and whether the accused's rights have been protected. *Etheridge*, 903 S.W.2d at 19; *Garrett v. State*, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990).

Once the State produces the warrant and affidavit to the trial court, "it then becomes the responsibility of the defendant to see that [the warrant and affidavit] are in the record if they are to be reviewed on appeal." *Moreno*, 858 S.W.2d at 461. The affidavit and warrant are hearsay and generally are not admissible before the jury. *Cannady v. State*, 582 S.W.2d 467, 469 (Tex. Crim. App. 1979).

Courts have excused the State from compliance with this production requirement if it introduces testimony from the magistrate who issued the warrant, the deputy who presented the probable cause affidavit for the warrant, or another witness familiar with the factual basis for the warrant. *See Dorsey v. State*, 964 S.W.2d 701, 704 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Presentation of such other evidence suffices if the accused has the opportunity to cross-examine the witness concerning the validity of the warrant and the trial court has an adequate opportunity to determine whether probable cause existed. *De La O*, 127 S.W.3d at 801.

When a search warrant affidavit is incorporated into a search warrant, it becomes a part of, and can be used to aid the description in, the search warrant. *Patterson v. State*, 663 S.W.3d 155, 158-59 (Tex. Crim. App. 2022).

**Discussion**

Appellant contends that he objected to the data search of his cellular telephone because the search was not authorized by the residential search warrant. In essence, he contends that we look only to the four corners of the search warrant itself without considering the supporting affidavit, even though the affidavit was incorporated into the warrant. The trial court overruled his objection. As part of his argument, Appellant further contends that the search warrant and affidavit relating to the search of the home should have been admitted into evidence. Since they were not in evidence, Appellant continues, he met his burden of establishing evidence was seized, but the State failed to establish that the evidence was legally seized pursuant to a valid search warrant, and the results of the search should have been suppressed.

The record reflects that the State properly discharged its burden when it produced the warrant and affidavit, which the trial court obviously reviewed, because the parties and the trial court read from the documents on the record as to their contents on this issue at the suppression hearing. *See Handy*, 189 S.W.3d at 298; *Moreno*, 858 S.W.2d at 461; *Cannady*, 582 S.W. at 469 (rejecting defendant's contention that State did not produce search warrant during hearing because reporter's notes of hearing indicate witness identified warrant and record included copy of affidavit and portion of warrant).

Once the State produced the warrant and affidavit to the trial court, it became Appellant's responsibility to ensure that they were included in the record on appeal. *Moreno*, 858 S.W.2d at 461. Appellant never discharged this responsibility. Contrary to Appellant's position, the search warrant and supporting affidavit are generally not admissible at trial. *See Cannady*, 582 S.W.2d at 469. In any event, after Appellant submitted his brief, at the State's request, the district clerk supplemented the record to include the search warrant and affidavit.

Next, the search warrant authorized a search of Appellant's residence, including all storage buildings or other areas on the curtilage of the property, and vehicles located at the residence. It authorized the collection of evidence described in the affidavit. The warrant specifically stated that "said affidavit is here now made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this warrant." The attached affidavit explains the

4

allegations and the investigation upon which the police developed probable cause that Appellant committed the offense. The affidavit also stated that within the suspected premises there are suspected items and evidence tending to show that he committed the offense in question, including "any and all cellular telephones." Additionally, the affidavit stated as follows:

> The scope of this search is to include and not limited to the physical examination and forensic examination of any electronic device, media, or other evidence that is seized. The scope of this search would include a complete forensic examination of any cellular telephone, including any attached digital memory cards, Subscriber Identity Module (SIM) cards, digital telephone information, contact information, call log information, Short Message Service (SMS) texts, e-mails, networking messages, photographs, videos, voice notes, voice messages digital documents, and internet information, and the scope of this search is to include and not limited to the forensic examination of any cellular telephone and any electronic or digital media that is attached to the device.

In summary, the warrant permissibly incorporated the affidavit for all purposes, the affidavit specified that Appellant's cell phones at the residence could be seized and searched, and the affidavit identified specific types of data which were included within the search of the cell phone.[2] *Patterson*, 663 S.W.3d at 158-59; *see Bowden v. State*, No. 08-19-00057-CR, 2021 WL 3661163, at *10 (Tex. App.—El Paso Aug. 18, 2021, pet. ref'd) (op., not designated for publication) (holding that search warrant incorporating affidavit, which in turn, sought to search contents of cellular phone, was sufficient to satisfy State's burden on this issue).

Appellant's first issue is overruled.

## PRIOR CONVICTIONS

In his second issue, Appellant argues that the trial court abused its discretion by admitting State's Exhibits 11 and 12, which allegedly showed his prior convictions, but neither document contained fingerprints, and according to him, the State failed to link him to those convictions beyond a reasonable doubt.

**Standard of Review and Applicable Law**

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists . . . and (2) the defendant is linked to

---

[2] We note that Appellant does not challenge the scope of the search on the cellular phone in this appeal, only that it was not properly produced to the trial court and the warrant itself, as opposed to the affidavit upon which it is based, failed to identify the scope of the search.

that conviction." ***Henry v. State***, 509 S.W.3d 915, 918 (Tex. Crim. App. 2016); *see also **Flowers v. State***, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007).

Evidence of a certified copy of a final judgment and sentence accompanied by fingerprint expert testimony may be a preferred and convenient means, but the State may use other types of evidence to prove an enhancement. ***Henry***, 509 S.W.3d at 918. Examples of acceptable evidence include the admission or stipulation of the defendant, testimony by people present at the time of the defendant's conviction and who can identify the defendant as the person convicted, and documentary proof which contains sufficient information to establish that a prior conviction exists and the defendant's identity as the person convicted. *See **id.***

With respect to documentary proof, no specific document or mode of proof is required to prove these two elements. ***Flowers***, 220 S.W.3d at 921. In proving prior convictions, identity often includes the use of a combination of identifiers, and each case is to be judged on its own individual merits. ***Littles v. State***, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984) (op. on reh'g). The totality of the circumstances determines whether the State met its burden of proof. ***Flowers***, 220 S.W.3d at 923. The proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle. ***Human v. State***, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988). The pieces standing alone usually have little meaning. ***Id.*** However, when the pieces are connected, they usually form the picture of the person who committed that alleged prior conviction or convictions. ***Id.*** "The trier of fact fits the pieces of the jigsaw puzzle together[,] . . . weighs the credibility of each piece[, and] . . . determines if these pieces fit together sufficiently to complete the puzzle." ***Flowers***, 220 S.W.3d at 923.

It is true that the mere introduction of the judgment and sentence is not sufficient even if the name on the judgment and sentence is the same as the name of the defendant. ***Henry***, 509 S.W.3d at 919. However, if a document associated with the prior conviction contains a photograph and a physical description of the person convicted, the trier of fact can base a finding of identity on that information. ***Littles***, 726 S.W.2d at 32; ***Gollin v. State***, 554 S.W.2d 683, 686 (Tex. Crim. App. 1977); ***Yeager v. State***, 737 S.W.2d 948, 951-52 (Tex. App.—Fort Worth 1987, no pet.).

Appellate courts review the sufficiency of the evidence linking a defendant to a prior conviction used for enhancement purposes by considering all the evidence in the light most favorable to the trial court's determination and deciding whether a rational trier of fact could have

made the determination beyond a reasonable doubt. *See Henry*, 509 S.W.3d at 919. If the totality of the evidence shows that the existence of the conviction and its link to the defendant can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily sufficient to prove a prior conviction. *Flowers*, 220 S.W.3d at 923. Provided that the proof of identity is sufficient, no error will be found on appeal. *Littles*, 726 S.W.2d at 32.

**Discussion**

At the punishment phase, the State offered five exhibits (State's Exhibits 9 through 13) as proof of Appellant's three prior convictions: (1) Cause No. 446743, a Travis County, Texas, misdemeanor assault case from 1996; (2) Cause No. CR487-634FX, a felony stealing and burglary case originating from the State of Missouri in 1988; and (3) Cause No. 964310, a Travis County felony sexual assault case from 1998. Appellant did not object to State's Exhibits 9 or 10 but argued that the others should be kept out—State's Exhibits 11 and 12, for lacking fingerprints; and State's Exhibit 13, for not being certified. The trial court overruled the objections and admitted all five exhibits.

On appeal, Appellant challenges only the trial court's admission of State's Exhibits 11 and 12. These two exhibits did not contain fingerprints and no fingerprint analysis was conducted. Appellant argues that the State failed to prove beyond a reasonable doubt he is linked to these convictions from the documents contained in these two exhibits. Specifically, he argues that Exhibit 11 contained court documents from Missouri linked to Appellant only by name, and that Exhibit 12 contained court documents from Travis County linked to Appellant by name and a signature purporting to be Appellant's signature, unaccompanied by any comparison between the exhibit and an exemplar. There was no testimony from the sponsoring witness regarding a signature analysis or any other factors that could link Appellant either to the State of Missouri judgment or the Travis County judgment. Appellant is correct that judgments containing only a name and signature are generally insufficient to establish the conviction and his link to it. *See, e.g.*, *Strehl v. State*, 486 S.W.3d 110, 114 (Tex. App.—Texarkana 2016, no pet.); *Prihoda v. State*, 352 S.W.3d 796, 809-10 (Tex. App.—San Antonio 2011, pet. ref'd).

However, that is not the only evidence the jury had to evaluate this issue. All of the exhibits provide pieces of the jigsaw puzzle that, taken together, could lead a rational jury to conclude beyond a reasonable doubt that Appellant was the person linked to these prior convictions. *See Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 923; *Human*, 749 S.W.2d at 836.

7

First, although not dispositive, we note that Appellant has a rather unique name. *See Benton v. State*, 336 S.W.3d 355, 359 (Tex. App.—Texarkana 2011, pet. ref'd) (holding that defendant's unique name, coupled with other information such as date of birth, listing his mother's name on judgments, and his signature on various documents constituted sufficient proof of prior convictions). Next, Appellant did not object to State's Exhibits 9 and 10. Both exhibits contained fingerprints and are certified. Exhibit 9 identifies Appellant as "Rainer Wiseman" with no other information. Exhibit 10 identifies Appellant as "Rainer B Wiseman," lists his birthdate as 03/03/1966, identifies his race as "Black," and references his "unicorn tattoo" as a unique identifier. Importantly, the unobjected to Exhibit 10 identifies itself as referring to the same cause number as that in Exhibit 11: CR487-634FX. Both Exhibits relate to the Missouri conviction. Exhibit 11 lists "Rainer B. Wiseman" with no other identifying information. It contains no fingerprints but was certified.

Exhibits 12 and 13 both pertain to the 1998 conviction in Travis County for sexual assault, stating they were for Cause Number 964310. Exhibit 12 is unaccompanied by fingerprints but Exhibit 13 contains fingerprints. Exhibit 12 is certified, whereas Exhibit 13 is not. Both Exhibits refer to Appellant as "Rainer Bernard Wiseman," with a birthdate of 3/3/66. Exhibit 12 states Appellant's race as "B," and Exhibit 13 states "skintone: DARK." As with the unobjected to Exhibit 10, Exhibit 13 lists Appellant's "unicorn tattoo" as a unique identifier, and is accompanied by a mugshot. Finally, Exhibits 12 and 13 refer to Appellant's prior criminal history, listing the Missouri conviction in CR487-634FX.

Taking all this information together, we hold that the jury could reasonably conclude beyond a reasonable doubt that Appellant is the person linked to these three prior convictions. *See Henry*, 509 S.W.3d at 918; *Flowers*, 220 S.W.3d at 923; *Human*, 749 S.W.2d at 836; *Benton*, 336 S.W.3d at 359.

Appellant's second issue is overruled.

## CRUEL AND UNUSUAL PUNISHMENT

In his third issue, Appellant argues that his life sentence without parole is grossly disproportionate to the crime committed, is constitutionally excessive, and amounts to cruel and unusual punishment under both the United States and Texas Constitutions.

However, Appellant did not raise a timely objection in the trial court regarding the issue of cruel and unusual punishment, and he therefore failed to preserve any such error. *See Rhoades v. State*, 934 S.W.2d 113, 120 (Tex. Crim. App. 1996) (waiver of rights under Texas Constitution); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (waiver of rights under United States Constitution); *see also* TEX. R. APP. P. 33.1(a); *see also Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion[;] . . . it [is] incumbent upon the Court itself to take up error preservation as a threshold issue."). For the reasons explained herein, despite Appellant's failure to preserve error, we conclude that his sentence does not constitute cruel and unusual punishment.

The United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. This provision was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). Similarly, the Texas Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." TEX. CONST. art. 1, § 13. The difference between the Eighth Amendment's "cruel and unusual" phrasing and the Texas Constitution's "cruel or unusual" phrasing is insignificant. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

The legislature is vested with the power to define crimes and prescribe penalties. *See Davis v. State*, 905 S.W.2d 655, 664 (Tex. App.—Texarkana 1995, pet. ref'd); *see also Simmons v. State*, 944 S.W.2d 11, 15 (Tex. App.—Tyler 1996, pet. ref'd). Courts have repeatedly held that punishment which falls within the limits prescribed by a valid statute is not excessive, cruel, or unusual. *See Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Davis*, 905 S.W.2d at 664. In this case, Appellant was convicted of continuous sexual abuse of a child under the age of fourteen, a first-degree felony with a punishment range from twenty-five to ninety-nine years of imprisonment, or life imprisonment. *See* TEX. PENAL CODE ANN. § 21.02(h) (West Supp. 2023). Moreover, by statute, an inmate is not eligible for parole when serving a sentence for conviction under Texas Penal Code Section 21.02, as in Appellant's case. *See* TEX. GOV'T CODE ANN. § 508.145(a)(2) (West Supp. 2023). Thus, the sentence of life imprisonment without parole assessed by the jury falls within

the range set forth by the legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. *See Harris*, 656 S.W.2d at 486; *Jordan*, 495 S.W.2d at 952; *Davis*, 905 S.W.2d at 664.

Nevertheless, Appellant urges this Court to consider the factors originally set forth in *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983). Under this test, the proportionality of a sentence is evaluated by considering (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for commission of the same crime in other jurisdictions. *Id.*, 463 U.S. at 292, 103 S. Ct. at 3011. The application of the *Solem* test has been modified by Texas courts and the Fifth Circuit Court of Appeals in light of the Supreme Court's decision in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) to require a threshold determination that the sentence is grossly disproportionate to the crime before addressing the remaining elements. *See, e.g.*, *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992); *see also Jackson v. State*, 989 S.W.2d 842, 845–46 (Tex. App.—Texarkana 1999, no pet.).

We are guided by the holding in *Rummel v. Estelle* in making the threshold determination of whether Appellant's sentence is grossly disproportionate to his crime. 445 U.S. 263, 100 S. Ct. 1133, 63 L.Ed. 2d 382 (1980). In *Rummel*, the Supreme Court considered the proportionality claim of an appellant who had received a mandatory life sentence under a prior version of the Texas habitual offender statute for a conviction of obtaining $120.75 by false pretenses. *See id.*, 445 U.S. at 266, 100 S. Ct. at 1135. In that case, the appellant received a life sentence because he had two prior felony convictions—one for fraudulent use of a credit card to obtain $80.00 worth of goods or services and the other for passing a forged check in the amount of $28.36. *Id.*, 445 U.S. at 265–66, 100 S. Ct. at 1134–35. After recognizing the legislative prerogative to classify offenses as felonies and, further, considering the purpose of the habitual offender statute, the court determined that the appellant's mandatory life sentence did not constitute cruel and unusual punishment. *Id.*, 445 U.S. at 284–85, 100 S. Ct. at 1144–45.

In this case, the offense Appellant committed—continuous sexual assault of a child under the age of fourteen—is far more serious than the combination of offenses committed by the appellant in *Rummel*. Though Appellant's sentence is greater with the addition of no possibility of parole than the life sentence upheld by the supreme court in *Rummel,* the crime is so serious

that a sentence of life without parole is not grossly disproportionate to Appellant's crime.   Because we do not find that the threshold test is satisfied, we need not apply the remaining elements of the **Solem** test.

Accordingly, we overrule Appellant's third issue.

## DISPOSITION

Having ***overruled*** Appellant's three issues, the trial court's judgment is ***affirmed***.

**GREG NEELEY**
Justice

Opinion delivered July 24, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 24, 2024**

**NO. 12-23-00198-CR**

**RAINER BERNARD WISEMAN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-1439-22)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*